******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

BETHANY FLOOD *v.* ROBERT FLOOD
(AC 42477)

Prescott, Devlin and Sheldon, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from judgment of the trial court, which granted the plaintiff's motion for a modification of the defendant's child support obligation. The parties' separation agreement, which had been incorporated into the dissolution judgment, required the defendant to pay the cost of the private elementary school education for the parties' minor child through the conclusion of the fifth grade. At the time the separation agreement became enforceable, the annual cost of the child's private school tuition was $55,000. After the child completed the fifth grade and was enrolled in public school, the plaintiff sought a modification of the defendant's child support obligation on the grounds that there had been a substantial change in circumstances because, inter alia, the child was no longer attending private school. The defendant also filed a motion for modification of child support, in which he requested a decrease in his court-ordered obligation on the ground that the plaintiff's income had increased since the date of the last support order. The trial court determined that the parties had contemplated that the plaintiff accepted a lower weekly child support amount in return for the defendant's being responsible for paying 100 percent of the child's private school tuition. The court further determined that, because the child had stopped attending private school, the savings for the defendant in tuition represented a substantial change of circumstances that entitled the plaintiff to a modification in child support. The court awarded the plaintiff $1246 in weekly child support, which was the maximum presumptive amount prescribed by the child support guidelines. The court order was silent as to the defendant's motion for modification. On appeal, the defendant claimed, inter alia, that the trial court erred in finding that there had been a substantial change in circumstances and that the court had ordered an improper wealth transfer between the parties because it failed to consider or respond to the needs of the child. *Held*:

1. The trial court's finding that there had been a substantial change in the defendant's financial circumstances was not clearly erroneous: the expiration of the defendant's court-ordered obligation to pay for the child's private schooling removed an encumbrance on his assets that made an additional $55,000 per year available to him for all purposes, including the payment of child support, and, although the separation agreement did not expressly link the amount of the plaintiff's initial child support award to the defendant's agreement to pay for the child's private schooling or entitle the plaintiff to reconsideration of that order once the defendant's payment obligation ended, the court reasonably determined that the amount of that award should be reconsidered in light of the termination of the defendant's private school payment obligation.

2. The trial court did not abuse its discretion in determining that the amount of the child support award would be $1246 per week; the court did not determine the amount of the award until after it conducted an extensive evidentiary hearing and considered the arguments of counsel, the parties' motions, memoranda of law and testimony, and all relevant rules, statutory authority and case law, and the court was not required to cite additional reasons for its increase in the defendant's child support obligation, as its order was consistent with statutory (§ 46b-84 (d)) criteria and within the range between the minimum and maximum support amounts established by the child support guidelines.

3. The defendant could not prevail on his claim that the trial court erred by failing to consider and rule on his motion for modification of his child support obligation; although the trial court never made a formal ruling on the defendant's motion, it expressly acknowledged that the motion was before it when it granted the plaintiff's motion for modification, which effectively and intentionally denied the defendant's motion, and, as the defendant conceded to this court that his motion was effec-

tively denied, he could not be granted relief, as he failed to raise a substantive challenge to the ruling.

Argued February 6—officially released July 14, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Shay, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Truglia, J.*, granted the plaintiff's motion for modification of child support and rendered judgment thereon, and the defendant appealed to this court. *Affirmed.*

*Gary I. Cohen*, for the appellant (defendant).

*Eric R. Posmantier*, with whom was *Kimberly A. Stokes*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The defendant, Robert Flood, appeals from the judgment of the trial court in favor of the plaintiff, Bethany Flood, on her postjudgment motion for modification of child support. The defendant claims that the trial court erred in granting the plaintiff's motion (1) by predicating its ruling on a finding that there had been a substantial change in circumstances since the date of the last court order requiring him to pay child support, as agreed to by the parties and entered by the court as part of the judgment dissolving their marriage, (2) by failing to consider or respond to the needs of the child when fashioning its modified child support order, and thus merely ordering an improper wealth transfer between the parties, and (3) by entering its modified order without ruling on the defendant's conflicting, simultaneously argued motion for modification of child support. We reject the defendant's claims and, thus, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The parties were married on June 5, 2004. On November 7, 2014, the trial court, *Shay, J.*, rendered judgment dissolving the parties' marriage. The judgment of dissolution incorporated by reference the terms of a written separation agreement between the parties, wherein they agreed, inter alia, to the division of their marital property, to the alimony and child support obligations between them, and to all arrangements for the parenting and schooling of their minor daughter (child). Section 4.1 of the separation agreement provides, more particularly, that the defendant would provide for the financial support of the child in three ways: (1) by making a weekly payment to the plaintiff of $464 in child support; (2) by continuing to provide health insurance for the child, and paying 80 percent of any unreimbursed medical expense that might be incurred for her benefit; and (3) by paying all expenses for the child's enrollment in private elementary school through the conclusion of fifth grade at Pear Tree Point School or another school mutually agreed to by the parties.[1]

At the time the separation agreement became enforceable under the judgment of dissolution, the child was enrolled in the fourth grade at Pear Tree Point School in Darien, where the cost of her attendance was approximately $55,000 per year. The child completed the fifth grade at Pear Tree Point School in June, 2016. Thereafter, in September, 2016, the child was enrolled in a public middle school in Greenwich.

On December 18, 2017, the plaintiff filed a motion for modification of child support. The plaintiff alleged in her motion for modification that there had been a substantial change in circumstances since the date of the last child support order because (1) "the defendant's

total compensation from employment has increased in one or more of the years following the entry of the last order," and (2) "the minor child is no longer attending private school."

On October 1, 2018, the defendant filed his own motion for modification of child support, in which he requested a decrease in his court-ordered obligation to pay child support to the plaintiff. In support of his motion for modification, the defendant alleged that there had been a substantial change in the plaintiff's financial circumstances since the date of the court's last child support order because the plaintiff's income had increased in that period by 188 percent. The defendant claimed, more specifically, that whereas the plaintiff's gross base pay as a part-time nurse, on the date of the judgment of dissolution, had been $186.65 per week, or $9705.80 per year, her gross base pay on the date of his motion for modification, in her then current position as a full-time nurse, was $537 per week, or $27,924 per year. The defendant further alleged that whereas, when the judgment of dissolution was rendered, the plaintiff's total expenses for the child had been $882.90 per week, or $45,910.80 per year, her expenses for the child had since fallen by 43 percent, to a total of $504 per week, or $26,208 per year.

In her memorandum of law in support of her motion for modification, the plaintiff not only reiterated her claims that there had been a substantial change in circumstances since the date of the judgment of dissolution due to the defendant's intervening increase in income and loss of responsibility to pay for the child's private schooling, but argued that the defendant had conceded that there had been a substantial change in circumstances in that interval by filing his own motion for modification of child support. The plaintiff concluded her memorandum by arguing that, under *Dowling* v. *Szymczak*, 309 Conn. 390, 407, 72 A.3d 1 (2013), an increase in child support was warranted because the initial child support order was not accomplishing the goal of "Connecticut's [i]ncome [s]hares [m]odel for child support, [under which a] child [of separated parents] should receive the same proportion of parental income [after her parents' separation] as [she] would have received if [her] parents [still] lived together." (Internal quotation marks omitted.)

The defendant filed a memorandum of law in opposition to the plaintiff's motion for modification, in which he argued that the plaintiff could not meet her burden of demonstrating that a substantial change in circumstances had occurred since the date of the last court order. Specifically, the defendant argued that there had been no substantial change in his financial circumstances since that date because there had not been a substantial change in his net income in that time frame. Child support, he argued, must be calculated on the

basis of the parties' net income, not their disposable income. Therefore, he argued, the child's enrollment in public school meant only that she had one less need for financial support at the time of the plaintiff's motion than she had when the judgment of dissolution was rendered, thus providing good reason for him to pay less, not more, money in child support than he was required to pay under the last court order. The plaintiff, he therefore concluded, was improperly using her motion for modification to make a "cash grab in the form of child support . . . ."

On December 17, 2018, the court, *Truglia, J.*, conducted a full day hearing on the parties' conflicting motions for modification. At that hearing, the plaintiff argued once again that there had been a substantial change in the defendant's financial circumstances since the date of the last child support order because (1) his income had increased in the interim and (2) the child was no longer attending private elementary school, and thus the defendant was no longer obligated to pay for her private schooling. The plaintiff contended that because the parties' combined net weekly income exceeded $4000, a proper award of child support under the child support guidelines could be not less than $443 per week nor more than $1246 per week, as determined by our Supreme Court in *Dowling* v. *Szymczak*, supra, 309 Conn. 390, and *Maturo* v. *Maturo*, 296 Conn. 80, 995 A.2d 1 (2010). Accordingly, the plaintiff requested the court to order an increase in the defendant's child support obligation to $1246 per week, the maximum amount awardable without deviating from the guidelines. In support of her position, the plaintiff argued that, although the child was entitled to receive up to a certain percentage of her father's income so that she might enjoy the same luxuries after her parents separated as she would have enjoyed if they had remained together, the current child support award did not give her that opportunity because it only enabled her to enjoy such luxuries when she was with the defendant.

In response to the plaintiff's arguments, the defendant contended that the alleged increase in his income since the date of the last court order and the intervening termination of his obligation to pay for the child's private schooling did not support a finding of a substantial change in circumstances. As for his income, he testified that, in the period from 2014, when the separation agreement became enforceable under the judgment of dissolution, until 2018, when the plaintiff filed her motion for modification, his income had increased by only 3 percent. As for the termination of his obligation to pay for the child's private schooling, he argued that even though he was no longer required to pay approximately $55,000 per year for such schooling, the termination of that payment obligation could not be considered a substantial change in circumstances because it did not result in any change in his net income. Child support,

he argued, must be based on the parties' net income, not on the manner in which they used that net income after they received it. Therefore, he argued, just because he had "more cash in [his] wallet" or "[m]ore disposable income" after his obligation to pay for the child's private schooling came to an end, his access to such increased funds did not constitute a substantial change in circumstances of the sort required to support a modification of his child support obligation.

In support of his own motion for modification, the defendant reargued his pleaded claim that the amount of his child support obligation should be decreased because, since the time of the divorce, the plaintiff's income had increased by 188 percent while her expenses for the child had decreased by 43 percent.

On January 2, 2019, the court granted the plaintiff's motion for modification by issuing a written order requiring the defendant to pay the plaintiff $1246 per week in child support, as she had requested, retroactive to January 8, 2018—the date on which the defendant had been served with the plaintiff's motion. In its order, the court explained the basis for its ruling as follows: "The court has carefully considered all of the evidence presented by both parties in this case, including the testimony of both parties and the financial records presented in support of and in opposition to the plaintiff's motion to modify child support.

"The court finds that the plaintiff has carried her burden of proof by a preponderance of the evidence that there has been a substantial change in circumstances since the initial child support order was entered in November, 2014. The court finds that the parties contemplated that the plaintiff accepted a lower weekly child support amount in return for the defendant being responsible for paying 100 percent of the private school tuition and other school costs for the parties' daughter. At the time of judgment, the daughter attended the Pear Tree Point School. The child stopped attending the Pear Tree Point School in June, 2016, and began attending a public school . . . in the fall of 2016. The savings in annual private school tuition represents a substantial change of circumstances entitling the plaintiff to a modification in child support. . . .

"[T]aking into consideration the respective gross and after-tax incomes of the parties and the parties' respective assets, the court finds that the proper weekly child support order is the maximum presumptive amount as prescribed by the guidelines." Although the trial court's order was silent as to the defendant's motion for modification, the defendant never sought judicial relief to clarify the nature or scope of the ruling set forth in that order. This appeal followed.

I

On appeal, the defendant first claims that the trial

court erred in granting the plaintiff's motion for modification by finding that there had been a substantial change in circumstances since the date of the judgment of dissolution, under which the last court order requiring him to pay child support to the plaintiff went into effect. The defendant claims, more particularly, that the court erred in finding that there had been a substantial change in his financial circumstances when his obligation to pay for the child's private schooling came to an end based on a finding that the parties intended to link the plaintiff's initial acceptance of the lowest presumptive amount of child support awardable under the guidelines to the defendant's agreement to pay all expenses for the child's private schooling through the fifth grade. The defendant claims that the trial court erred in making such a finding as to the parties' intent because there is no language in the agreement expressing such an intent, there is no other evidence in the record to support such a finding, and the parties did not base their arguments for or against the plaintiff's motion for modification on the presence or absence of any such intent.

The plaintiff does not dispute the defendant's claim that she did not base her motion for modification on allegations or proof that the parties intended to base the initial amount of her child support award on the defendant's willingness to pay for the child's private schooling through the fifth grade. She contends, however, that although the court undeniably made such a finding, that finding was not central to its ultimate determination that there had been a substantial change in the defendant's financial circumstances since the date of the judgment of dissolution. Instead, she argues, the court's finding of a substantial change in circumstances was based principally on the proven fact that the termination of the defendant's private school payment obligation for the child had made a considerable sum of previously committed money—specifically, $55,000 per year in after-tax dollars—available for his discretionary use since the child completed the fifth grade, thereby substantially increasing his usable assets and materially improving his financial condition since that time. For the following reasons, we agree with the plaintiff that the trial court's finding of a substantial change in circumstances must be upheld.

We begin by setting forth the applicable standard of review. "The scope of our review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Nevertheless, we may reverse a trial court's ruling on a modification motion if the trial court applied the wrong standard of law." (Internal quotation marks omitted.) *Fox* v. *Fox*,

152 Conn. App. 611, 619, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014).

General Statutes § 46b-86 governs the modification of an alimony or child support order after the date of a dissolution judgment. Section 46b-86 (a) provides that a final order for alimony or child support may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. "Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. . . .

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification. . . . More specifically, these criteria, as outlined in General Statutes § [46b-84], require the court to consider the needs and financial resources of each of the parties and their children . . . . The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties. . . .

"Thus, [w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the § [46b-84] criteria, make an order for modification. . . . The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties." (Footnote omitted; internal quotation marks omitted.) *Fox* v. *Fox*, supra, 152 Conn. App. 620–21 (postjudgment motion to modify child support).

"A finding of a substantial change in circumstances is subject to the clearly erroneous standard of review." (Internal quotation marks omitted.) *Thomasi* v. *Thomasi*, 181 Conn. App. 822, 842, 188 A.3d 743 (2018). A factual finding is not clearly erroneous when there is evidence in the record to support it, unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." (Internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 726, 197 A.3d 1000 (2018).

Following the evidentiary hearing, the court found that "the plaintiff has carried her burden of proof by a preponderance of the evidence that there has been a substantial change in circumstances since the initial child support order was entered in November, 2014. The court finds that the parties contemplated that the plaintiff accepted a lower weekly child support amount in return for the defendant being responsible for paying 100 percent of the private school tuition and other school costs for the parties' [child]. At the time of judgment, the [child] attended the Pear Tree Point School. The child stopped attending the Pear Tree Point School in June, 2016, and began attending a public school . . . in Greenwich in the fall of 2016. *The savings in annual private school tuition represents a substantial change of circumstances entitling the plaintiff to a modification in child support.*" (Emphasis added.)

By the foregoing language in its order granting the plaintiff's motion for modification, the trial court made it clear that the principal basis for its finding that there had been a substantial change in circumstances since the date of the last court order was not the mere termination of the defendant's obligation to pay for the child's private schooling, which had no automatic consequences under the parties' separation agreement or the judgment of dissolution, but the material improvement in the defendant's financial situation that resulted from the defendant's subsequent "savings in annual private school tuition . . . ." As the realization of such substantial savings is indisputable, the basic issue presented to this court is whether such a change in a party's financial circumstances, substantially increasing his usable assets without a corresponding increase in his net income by relieving him of a preexisting obligation to use those assets to satisfy a binding court order, can be found to constitute a substantial change in circumstances within the meaning of § 46b-86 (a). Under our long-standing case law interpreting and applying § 46b-86 (a), we conclude that that question must be answered in the affirmative.

We find, more particularly, that *Bartlett* v. *Bartlett*, 220 Conn. 372, 382–83, 599 A.2d 14 (1991), and *Fabiano* v. *Fabiano*, 10 Conn. App. 466, 469–70, 523 A.2d 937 (1987), are instructive on this issue. In *Bartlett*, the plaintiff alleged that it was improper for the trial court to refuse to consider evidence of the vesting of the defendant's inheritance since the date of the last court order as a basis for determining, on the plaintiff's motion to modify alimony, if there had been a substantial change in circumstances since the date of that order within the meaning of § 46b-86 (a). The plaintiff argued that that the court's ruling was erroneous because the

defendant's "financial circumstances had changed substantially due to his [newly vested] inheritance . . . ." *Bartlett* v. *Bartlett,* supra, 220 Conn. 382. Our Supreme Court agreed with the plaintiff, ruling that "the defendant's financial circumstances changed substantially upon the vesting of [the defendant's] inheritance, warranting the plaintiff's motion . . . to increase the award of periodic alimony." Id., 381. Significantly, moreover, the Supreme Court concluded its analysis by observing, more generally, that, "[w]hether the defendant inherited 'property' or cash is of no consequence; *a substantial increase in wealth of any sort may form an appropriate ground for a motion to modify alimony.*" (Emphasis added.) Id., 383.

Similarly, in *Fabiano,* "[t]he principal issue [on] appeal [was] whether the trial court erred by declining to modify the defendant's child support obligation to the plaintiff [under § 46b-86], where the defendant's assets had increased substantially as a result of a personal injury award." *Fabiano* v. *Fabiano,* supra, 10 Conn. App. 466. Upon a review of the record, this court found that the "continuation of the prior order would be unfair and improper"; id., 469; because the increase in assets was "a significant betterment in the financial condition of [the defendant] . . . and constituted an unforeseen change of circumstances justifying a reconsideration by the trial court of the prior . . . support orders." (Citation omitted; internal quotation marks omitted.) Id., 470.[2]

The circumstances in the present case are similar to those at issue in *Bartlett* and *Fabiano* because here, as in those cases, the defendant gained access to and the right to make immediate use of substantial additional assets between the date of the last court order and the date of the plaintiff's motion for modification. Those newly available assets, more particularly, were savings the defendant had realized by no longer having to pay for the child's private schooling, which he had agreed to do under the parties' separation agreement until the child completed the fifth grade, and the dissolution court had ordered him to do by making the separation agreement enforceable as part of the judgment of dissolution.

Importantly, this increase in the defendant's available assets did not result from mere changes in his discretionary spending habits or other voluntary choices as to how to use or invest his assets. No such change would constitute a substantial change in circumstances because the defendant could always reverse it in the continuing exercise of total control over all of his assets. Such a change would therefore not affect the defendant's total assets, which would always remain fully available to him, at all times and for all purposes, including consideration by the trial court as possible sources of wealth for the payment of child support.

The change in available assets in this case, by contrast, resulted from the termination of the defendant's obligation, under a binding court order, to make substantial payments of after-tax dollars for the child's private schooling. When the initial court order of child support was entered as part of the parties' judgment of dissolution, that binding court order encumbered the defendant's assets to the extent of his private school payment obligation, and continued to do so for as long as the order remained in effect. The existence of the order thus made the encumbered assets unavailable to the defendant for any other purpose, including the payment of child support. When the order expired, however, the resulting encumbrance upon the defendant's assets was removed, making an additional $55,000 per year in after-tax dollars available to the defendant for all purposes, including the payment of child support. By gaining access to those previously encumbered assets, the defendant realized a substantial increase in his disposable wealth and a significant betterment of his financial condition just as surely as if he had received assets of the same value by the vesting of an inheritance, as in *Bartlett*, or the awarding of civil damages, as in *Fabiano*.

For the defendant, as the trial court properly recognized, the savings realized by the termination of his private school payment obligation were new assets in his pocket that could and should be considered in determining the amount of his child support obligation to the plaintiff going forward. Therefore, although the separation agreement did not expressly link the amount of the plaintiff's initial child support award to the defendant's agreement to pay for the child's private schooling through the fifth grade, or contain a look-back provision automatically entitling the plaintiff to reconsideration of that order once the defendant's payment obligation came to an end, the court reasonably determined that the amount of that award should be reconsidered in light of the termination of the defendant's private school payment obligation because a larger amount of money had thereby become available to the defendant for that purpose.[3]

On the basis of that evidence, we conclude that the court's finding that there had been a substantial change in the defendant's financial circumstances since the date of the last court order requiring him to pay child support to the plaintiff was not clearly erroneous.

II

The defendant next claims that the trial court erred because the granting of the plaintiff's motion for modification amounted to an impermissible postdissolution transfer of wealth between the parties rather than a need-based increase in the amount of his child support obligation. Specifically, the defendant contends that the

trial court failed to consider the child's needs in establishing the amount of its modified child support award, thus rendering that award an improper wealth transfer to the plaintiff. We disagree.

A challenge to a trial court's application of a statute in modifying a child support order raises a question of law, over which this court exercises plenary review. See *Mason* v. *Ford*, 176 Conn. App. 658, 662, 168 A.3d 525 (2017). Our Supreme Court in *Dowling* provided clear guidance for determining child support obligations in high income situations: "In a trilogy of recent cases, [our Supreme] [C]ourt has already discussed the guidelines and accompanying schedule in detail. See *Maturo* v. *Maturo*, supra, 296 Conn. 80; *Misthopoulos* v. *Misthopoulos*, [297 Conn. 358, 999 A.2d 721 (2010)]; *Tuckman* v. *Tuckman*, 308 Conn. 194, 61 A.3d 449 (2013). Accordingly, we will not till this legal landscape any more than is necessary for the resolution of the present case. . . . [T]he schedule sets forth a presumptive percentage and resultant amount corresponding to specific levels of combined net weekly income; the schedule begins at $50 and continues in progressively higher $10 increments, terminating at $4000. . . . This court has recognized that the guidelines nonetheless apply to combined net weekly income in excess of that maximum amount. . . . Indeed, the regulations direct that, [w]hen the parents' combined net weekly income exceeds [$4000], child support awards shall be determined on a case-by-case basis, and the current support prescribed at the [$4000] net weekly income level shall be the minimum presumptive amount. . . .

"While the regulations clearly demarcate the presumptive minimum amount of the award in high income cases, they do not address the maximum permissible amount that may be assigned under a proper exercise of the court's discretion. . . . [T]his court has remained mindful that the guidelines . . . indicate that such awards should follow the principle expressly acknowledged in the preamble [to the guidelines] and reflected in the schedule that the child support obligation as a percentage of the combined net weekly income should decline as the income level rises. . . . We therefore have determined that child support payments . . . should presumptively not exceed the [maximum] percent [set forth in the schedule] when the combined net weekly income of the family exceeds $4000, and, in most cases, should reflect less than that amount. . . .

"Either the presumptive ceiling of income percentage or presumptive floor of dollar amount on any given child support obligation, however, may be rebutted by application of the deviation criteria enumerated in the guidelines and by the statutory factors set forth in § 46b-84 (d). . . . In order to justify deviation from this range, the court must first make a finding on the record as to why the guidelines were inequitable or inappropri-

ate . . . . Thus, this court unambiguously has stated that, when a family's combined net weekly income exceeds $4000, the court should treat the percentage set forth in the schedule at the highest income level as the presumptive ceiling on the child support obligation, subject to rebuttal by application of the deviation criteria enumerated in the guidelines, as well as the statutory factors described in § 46b-84 (d). . . . In other words, as long as the child support award is derived from a total support obligation within this range—between the presumptive minimum dollar amount and the presumptive maximum percentage of net income—a finding in support of a deviation is not necessary." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Dowling* v. *Szymczak*, supra, 309 Conn. 400–402.

In adjudicating child support cases, courts in our jurisdiction have been reminded to avoid wealth transfers when awarding child support. In *Maturo*, for example, our Supreme Court expressly warned as follows against wealth transfers or disguised alimony: "The effect of unrestrained child support awards in high income cases is a potential windfall that transfers *wealth* from one spouse to another or from one spouse to the children under the guise of child support. In the present case, the award of 20 percent of the defendant's indeterminate annual bonus without any justification relating to the characteristics or needs of the children closely resembles the 'disguise[d] alimony' this court disapproved of in *Brown* v. *Brown*, 190 Conn. 345, 349, 460 A.2d 1287 (1983)." (Emphasis in original.) *Maturo* v. *Maturo*, supra, 296 Conn. 105. Moreover, the preamble to the child support guidelines expressly acknowledges that a child support obligation, as a percentage of the combined net weekly income, should decline as the income level rises. Child Support and Arrearage Guidelines (2015), preamble, § (d), p. v.

In this case, the defendant focuses on the "warnings" to courts about making wealth transfers or providing increased alimony in the guise of increased child support awards in high income situations, as described in *Maturo*. The defendant's reliance on *Maturo*, however, is misplaced because *Maturo* involved a "child support order [that was found to be] improper because it was inconsistent with the statutory criteria and with the principles expressed in the guidelines." *Maturo* v. *Maturo*, supra, 296 Conn. 89. As a result, the warning in *Maturo* was made in the context of a court's award of child support that exceeded the highest amount established for families at the upper limit of the schedule. Id., 87, 104–105. Therefore, the court in *Maturo* held that the trial court "misapplied *the deviation criteria* and failed to expressly consider the factors set forth in § 46b-84 (d), thus providing no acceptable rationale for its decision." (Emphasis added.) Id., 89. In the present case, however, the trial court's modified child support award did not fall outside the range prescribed by

the guidelines but, rather, increased the child support to the highest amount authorized by those guidelines. Consistent with this analysis, our Supreme Court, in its opinion in *Dowling*, which was issued three years after *Maturo*, explained that "as long as the child support award is derived from a total support obligation within this range—between the presumptive minimum dollar amount and the presumptive maximum percent of income—a finding in support of a deviation is not necessary." *Dowling* v. *Szymczak*, supra, 309 Conn. 402. This means that, although the trial court is required to consider the statutory criteria set forth in § 46b-84 (d) in setting the amount of a modified child support order, the statute does not "mandate that a court articulate why it is ordering an amount consistent with the criteria." (Internal quotation marks omitted.) *Kirwan* v. *Kirwan*, supra, 185 Conn. App. 746.

In light of this important distinction, we cannot say that the trial court erred in determining the amount of its modified award under the guidelines. In making its order and findings of fact, the court conducted an extensive evidentiary hearing on the motions before it and reviewed the parties' memoranda in support of and in opposition to those motions, the testimony they presented, all relevant rules, statutory authority and case law, and the arguments of counsel. In its order, the court expressly noted that the "statutory criteria of § 46b-84 [d]" had been considered. It also noted that it had considered "the respective gross and after-tax incomes of the parties and the parties' respective assets . . . ." It was not until after those considerations had been made that the court determined that the child support award would be $1246 per week. Although the court did not cite any additional reasons for its increase in the defendant's child support obligation, it was not required to do so because the child support order was consistent with statutory criteria and within the range between the minimum and maximum support amounts established by the guidelines. See *Kirwan* v. *Kirwan*, supra, 185 Conn. 746–47. Indulging every reasonable presumption in favor of upholding the court's ruling, we cannot say that the trial court abused its discretion in so ordering or that it applied the wrong standard of law.

### III

Lastly, the defendant claims that the trial court erred because it failed properly to consider and rule on his motion for modification, and, thus, that this court should remand this case for further proceedings on that motion. Although the trial court never made a formal ruling on the defendant's motion, it expressly acknowledged that the defendant's motion was before it when it issued its ruling granting the plaintiff's conflicting motion. If parties file conflicting motions, and one such motion is granted, it can reasonably be presumed that

the other motion was thereby denied. See *Lambert* v. *Donahue*, 78 Conn. App. 493, 511–12, 827 A.2d 729 (2003); id., 512 ("although not specifically mentioned in the decision, the court did, in essence, rule on [the plaintiff's] motion . . . [by] finding in favor of [the defendant]"). The defendant concedes that under this rule of law, the court did in fact effectively deny his motion. In consideration of this applicable precedent, and of the defendant's failure to seek further judicial relief to clarify the nature or scope of the trial court's ruling, we conclude that by granting the plaintiff's motion for modification, the trial court effectively and, thus, intentionally, with full consideration of the defendant's counterarguments, denied the defendant's conflicting motion. In light of the defendant's concession that his motion was effectively denied, we cannot grant him relief with respect to that ruling because he has failed to raise a substantive challenge to the ruling.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Section 4.1 is the first subsection of article IV of the agreement, entitled "CHILD SUPPORT/POST MAJORITY EDUCATIONAL SUPPORT/PROPERTY SETTLEMENT/ALIMONY/RETIREMENT PLAN." It sets forth all of the parties' agreements concerning the provision of financial support for the child.

[2] When *Fabiano* was decided, a claimant seeking to modify an alimony or child support order under § 46b-86 was required to show that an *uncontemplated* substantial change in circumstances had occurred since the date of the last court order. *Fabiano* v. *Fabiano*, supra, 10 Conn. App. 469. An uncontemplated change, however, is no longer required by statute. Number 87-104 of the 1987 Public Acts eliminated the requirement in § 46b-86 that modifications of alimony or child support be based on uncontemplated changes of circumstances. See General Statutes § 46b-86 (a) ("[a]fter the date of judgment, modification of any child support order issued before, on or after July 1, 1990, may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution").

[3] It might further be noted that the two paragraphs of the separation agreement that established the amount of the initial court order of child support and the defendant's obligation to pay all expenses for the child's private schooling through the fifth grade were set forth in the same section of the separation agreement, § 4.1, along with a third paragraph requiring the defendant to pay for the child's health insurance. This recitation of those obligations to the child in a single paragraph of the parties' separation agreement supports the inference that the parties agreed to them as complementary parts of a unified matrix of financial support for the child, to meet her changing needs as she grew older until she reached the age of majority. The amount of child support that the defendant agreed to pay directly to the plaintiff was thus only one component of the total financial support the parties agreed to provide for her. Therefore, when one essential need of the child changed with the passage of time, the deployment of her parents' assets to provide for her continuing support could change as well, providing different amounts of money for different purposes as her activities changed and her needs evolved. This factor as well supports the court's determination that the practical increase in the defendant's usable wealth that resulted from the termination of his private school payment obligation made it appropriate for the court to consider such increased wealth as a basis for modifying its initial child support award.