******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

EDWARD BERMAN *v.* ELLEN BERMAN
(AC 42554)

Elgo, Alexander and DiPentima, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant had previously been dissolved, appealed from the decision of the trial court denying in part his postjudgment motion for modification of alimony. The plaintiff sought a modification of his obligation to pay alimony, to provide for the defendant's health insurance and to maintain life insurance, alleging that his income had decreased substantially since the date of dissolution. At the hearing on the motion, the self-represented defendant made statements regarding certain equity that she had not taken in the plaintiff's business during her cross-examination of the plaintiff and during her closing argument, but did not question the plaintiff regarding the equity that she allegedly gave up or any claims to real estate or business assets that she may have abandoned in exchange for alimony. *Held*:

1. The trial court improperly found that the defendant had relinquished claims she might have had to certain marital assets in exchange for lifetime alimony, as that finding was not supported by the record: there was no testimony or evidence proffered at the hearing on the motion for modification to demonstrate that the parties had made such an exchange, nor was there any language in the parties' agreement that supported the court's finding, and, although the defendant made statements at the hearing while questioning the plaintiff and during her closing argument that she gave up equity for alimony, her statements did not constitute evidence, and the court appropriately cautioned her to that effect, and the defendant did not offer testimony from any other witness, including herself, in support of her claim that she exchanged equity for lifetime alimony.

2. The trial court abused its discretion in denying the plaintiff's motion for modification of alimony on the basis of its erroneous finding that the defendant had given up claims during the dissolution proceedings; although the trial court implicitly found a substantial change in the plaintiff's financial circumstances since the date of the dissolution, there was nothing in the separation agreement, which terms were negotiated with the assistance of counsel, to indicate that the defendant gave up equity or assets in exchange for lifetime alimony, nor was there any evidence proffered at the hearing on the motion demonstrating that the parties had made such an exchange; accordingly, there was a lack of an evidentiary basis in the record for the court's finding of an exchange of assets or equity for lifetime alimony, on which the court's ultimate decision denying the motion in part was based.

Argued December 7, 2020—officially released March 16, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Winslow, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Eschuk, J.*, denied in part the plaintiff's motion for modification of alimony, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Christopher P. Norris*, for the appellant (plaintiff).

*Ellen Berman*, self-represented, the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Edward Berman, appeals from the judgment of the trial court denying in part his motion to modify his obligation to pay alimony and to provide health and life insurance to the defendant, Ellen Berman.[1] On appeal, the plaintiff claims that the court erred in (1) finding that the defendant had ceded claims she might have had at the time of the dissolution of the parties' marriage in exchange for lifetime alimony, (2) denying his motion for modification of alimony on the basis of that finding and its finding that the defendant had given up claims during the dissolution proceedings as part of the mosaic, and (3) denying his motion for modification of alimony after finding that his income had decreased by approximately 32 percent since the date of the dissolution. We reverse the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of the claims on appeal. The plaintiff and the defendant were married in Norwalk on October 24, 1976. Following a breakdown in the parties' marriage, the trial court, *Winslow, J.*, rendered a judgment dissolving their marriage on January 16, 2013. The court incorporated into the dissolution judgment a separation agreement (agreement) that had been executed and signed by the parties, both of whom had legal representation in negotiating the agreement. The agreement provided that, upon the sale of the marital residence in Ridgefield, the plaintiff was required to pay the defendant $6500 per month as alimony. Further, upon the sale of a condominium located in Vermont that was owned by the parties, the plaintiff's alimony obligation was to increase to $8000 per month and continue until either the death of the plaintiff, the death of the defendant or the defendant's remarriage. The agreement also required the plaintiff to be responsible for the defendant's medical and dental insurance, and to maintain term life insurance in the amount of $1 million with the defendant listed as the beneficiary. Pursuant to the agreement, the plaintiff also was responsible for a number of the parties' debts, including payment of an outstanding line of credit; payment of the mortgages on the marital residence, along with taxes, insurance, utilities, repairs and maintenance expenses until the property is sold; payment of any deficiency related to the sale of the marital residence and the sale of the Vermont condominium; and payment of any outstanding loans related to his medical practice.

On August 29, 2018, the plaintiff filed a motion for modification of his alimony obligation as set forth in the agreement, as well as his obligation to pay for the defendant's health insurance and to maintain life insurance. In his motion, the plaintiff alleged that his income had decreased substantially since the date of the dissolution. On December 21, 2018, the trial court, *Eschuk,*

*J.*, rendered judgment denying in part the plaintiff's motion for modification. See footnote 1 of this opinion. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth our standard of review. We review the court's judgment denying the motion for modification of alimony "under an abuse of discretion standard. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Callahan* v. *Callahan*, 192 Conn. App. 634, 644–45, 218 A.3d 655, cert. denied, 333 Conn. 939, 218 A.3d 1050 (2019).

"General Statutes § 46b-86 governs the modification of an alimony or child support order after the date of a dissolution judgment. Section 46b-86 (a) provides that a final order for alimony or child support may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. . . .

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification. . . . Thus, [w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the [General Statutes § 46b-84]

criteria, make an order for modification. . . . A finding of a substantial change in circumstances is subject to the clearly erroneous standard of review." (Citation omitted; internal quotation marks omitted.) *Flood* v. *Flood*, 199 Conn. App. 67, 77–78, 234 A.3d 1076, cert. denied, 335 Conn. 960, 239 A.3d 317 (2020).

Moreover, "[i]t is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." (Internal quotation marks omitted.) *Giordano* v. *Giordano*, 200 Conn. App. 130, 136, 238 A.3d 113, cert. denied, 335 Conn. 970, 240 A.3d 286 (2020); see also *Winthrop* v. *Winthrop*, 189 Conn. App. 576, 581–82, 207 A.3d 1109 (2019).

I

The plaintiff first claims that the trial court improperly found that the defendant had relinquished claims she might have had to certain marital assets in exchange for lifetime alimony. Specifically, the plaintiff claims that there was no testimony or evidence in the record to support the court's finding that such an exchange of assets for alimony had occurred. We agree.

The following additional facts are necessary for our resolution of this claim. A hearing on the plaintiff's motion for modification was held on November 21, 2018, at which both parties testified. The plaintiff was represented by counsel; the defendant was, as she is before us, a self-represented party. The plaintiff testified that he is a medical doctor and is sixty-eight years old. He offered as an exhibit his financial affidavit from the date of the dissolution of the marriage, which showed his gross and net weekly income at that time. He also offered as an exhibit his 2012 tax return, which showed an income of $466,000 the year before his divorce. He testified that in 2012, following an inquiry by a Medicare contractor, he entered into an agreement that resulted in a payment order, which required him to pay $215,000 related to the Medicare investigation. The plaintiff further testified that in June, 2015, major changes occurred in his medical practice. Specifically, he stated that as a result of a newspaper article about the Medicare settlement and other factors, he lost income on a variety

of fronts. To support that claim, he offered as an exhibit his 2017 tax return, which showed an income of $151,093. He testified that he has $336,000 in liabilities and that the Vermont property is in foreclosure. When asked if he has a negative net worth on his financial affidavit, he responded, "Yes I do. I guess I'm worthless." Because his "financial situation was extremely different when [the] negotiations [regarding] the divorce were agreed upon," he testified that he could no longer afford his $6500 monthly alimony obligation, let alone the increase to $8000 in alimony as set forth in the agreement. Thus, he requested that his alimony obligation be terminated.

During cross-examination of the plaintiff, the self-represented defendant asked the plaintiff if it is true that the defendant "took much less alimony than [she] could have gotten and took no equity," to which the plaintiff responded that "[t]here was no equity." Thereafter, the defendant stated that there was "about $300,000 equity in the office at the time of [the] divorce," and that she "did not take that equity." The court explained to the defendant that she needed to be asking the plaintiff questions, rather than making statements, and that she could make a statement later on, but that her statement could not add evidence. After the court finished its explanation, the defendant again attempted to ask a question about equity, to which the plaintiff again replied that his medical practice did not have $300,000 of equity in the property.

During the remainder of her cross-examination of the plaintiff, the defendant did not ask any questions regarding the equity that she allegedly gave up or any claims to real estate or business assets that she may have abandoned in exchange for alimony. The defendant subsequently was called to the witness stand by the plaintiff's attorney and questioned concerning the requirement in the dissolution judgment that she apply for Social Security disability benefits within one day of the date of the judgment. After the defendant's brief testimony answering those questions, the plaintiff's attorney informed the court that he had no other witnesses to call, and the court stated to the defendant that she could now call witnesses. In response, the defendant called the plaintiff to the witness stand and questioned him further regarding the cost of his wedding and his ability to afford vacations. When the questioning of the plaintiff was completed, the court asked the defendant if there were any other witnesses that she wanted to call, including herself, to which she responded, "No." During her closing argument, the defendant stated twice that she took no equity and significantly less alimony because the plaintiff was supposed to assume all of the debt. She further stated that she did "not recall any discussions about [the plaintiff] being investigated by Medicare during the collaborative divorce," and, that if she knew, she "would have taken

the office equity but was advised by [her] attorney that [she had] good alimony and not to worry."In its memorandum of decision denying the plaintiff's motion for modification of alimony, the court stated: "The agreement entered into by the parties at the time of the divorce is a detailed and complicated one. It was entered into with the assistance of counsel on both sides. Courts have often described the careful redistribution of marital property at time of dissolution as a 'mosaic' in the sense that each part of the disposition fits into other parts making a whole 'picture.' The court finds that the agreement in this case truly reflects that concept. It would be difficult, if not impossible, to remove one part without damaging the remainder. The defendant is in poor health, a fact clearly contemplated at the time of the agreement, and has to have medical coverage: *a benefit for which she waived other claims. She also exchanged claims she might have had to real estate and business assets for the supposed security of lifetime support.* . . . [The plaintiff's] agreement to pay alimony to the defendant was clearly to support her ongoing needs, rather than being rehabilitative. She has no other source of income than her alimony. It is highly improbable that she could obtain employment. Even without her health issues her skills as a nurse are outdated and would be difficult to reacquire. Essentially, *the defendant appears to have exchanged her claims to various assets for lifetime alimony and payment of her medical expenses.*" (Emphasis added.)

On the basis of our careful review of the record, including the transcript of the hearing on the plaintiff's motion for modification, we conclude that the court's finding that the defendant gave up her claims to certain marital assets in exchange for lifetime alimony is not supported by the record. There was simply no evidence proffered at the hearing on the motion for modification to demonstrate that the parties had made such an exchange, nor was there any language in the parties' agreement that supported the court's finding. Although the defendant made statements at the hearing while questioning the plaintiff and during her closing argument that she gave up equity for alimony, her statements did not constitute evidence, and the court appropriately cautioned her to that effect. See *Hall* v. *Hall*, 182 Conn. App. 736, 756, 191 A.3d 182 (2018) ("[A]rgument is not evidence. As judges routinely admonish juries: Argument is argument, it is not evidence. . . . So, too, arguments of a pro se litigant are not proof. . . . *In re Justin F.*, 116 Conn. App. 83, 96, 976 A.2d 707, appeal dismissed, 292 Conn. 913, 973 A.2d 660, cert. denied, 293 Conn. 914, 978 A.2d 1109 (2009), cert. denied sub nom. *Albright-Lazzari* v. *Connecticut*, 559 U.S. 912, 130 S. Ct. 1298, 175 L. Ed. 2d 1087 (2010); see also *Baker* v. *Baker*, [95 Conn. App. 826, 832–33, 898 A.2d 253 (2006)] (representations of counsel are not evidence)." (Internal quotation marks omitted.)), aff'd, 335 Conn.

377, 238 A.3d 687 (2020). The defendant did not offer testimony from any other witness, including herself, in support of her claim that she exchanged equity for lifetime alimony. The court's factual finding of such an exchange, therefore, is clearly erroneous.

## II

The plaintiff's second claim is that the trial court improperly denied his motion for modification on the basis of its clearly erroneous finding that the defendant had given up claims during the dissolution proceedings. We agree.

As we stated previously, the party moving for a modification of alimony must demonstrate the existence of a substantial change in circumstances since the last court order, which, in the present case, is the dissolution judgment. See *Brown* v. *Brown*, 199 Conn. App. 134, 157, 235 A.3d 555 (2020); *Flood* v. *Flood*, supra, 199 Conn. App. 77–78. "[W]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and . . . make an order for modification." (Emphasis omitted; internal quotation marks omitted.) *Brown* v. *Brown*, supra, 157; see also *Callahan* v. *Callahan*, supra, 192 Conn. App. 645 (establishment of changed circumstances is condition precedent to party's relief).

The trial court made no express finding of a substantial change in circumstances. This court has determined previously, however, "that an implicit finding of a substantial change of circumstances by the trial court will satisfy the threshold predicate for modification of a support order." *Schade* v. *Schade*, 110 Conn. App. 57, 63, 954 A.2d 846, cert. denied, 289 Conn. 945, 959 A.2d 1009 (2008). In *Schade*, this court reasoned that "[a] fair reading of the trial court's memorandum of decision and its articulation leads us to the more logical and compelling conclusion that the trial court did find a substantial change of circumstances and then concluded that the alimony order should remain the same." Id., 64.

We conclude that the present case presents a similar situation of an implicit finding of a substantial change in circumstances. After noting in its memorandum of decision that the plaintiff's 2012 tax return showed an annual gross income of $466,423, while his 2017 tax return showed a decline in his annual gross income to $151,093, the court found that "[t]he plaintiff's financial circumstances have undoubtedly deteriorated since the date of the dissolution." The court further noted the $215,000 penalty stemming from the Medicare investigation that the plaintiff was required to pay following the dissolution, along with the loss of business he sustained

as a result of that investigation. After stating in its memorandum of decision that "[t]he court may modify an order for the payment of alimony pursuant to . . . § 46b-86 upon a showing of a substantial change in the circumstances of either party, *but is not required to do so*," the court found that "while [the plaintiff's] financial state has worsened since the dissolution, the court finds that he still has resources available to him." (Emphasis added.) A fair reading of the court's memorandum of decision leads us to conclude that the court implicitly found a substantial change in the plaintiff's financial circumstances since the date of the dissolution but determined that the alimony order should not be modified.

In declining to modify the plaintiff's alimony obligation, the court noted that the "agreement entered into by the parties at the time of the divorce is a detailed and complicated one," and that "[i]t would be difficult, if not impossible, to remove one part without damaging the remainder." The court further explained that the defendant "has to have medical coverage: a benefit for which she waived other claims. She also exchanged claims she might have had to real estate and business assets for the supposed security of lifetime support. . . . Essentially, the defendant appears to have exchanged her claims to various assets for lifetime alimony and payment of her medical expenses." In part I of this opinion, however, we concluded that the court's finding of such an exchange of assets for alimony was clearly erroneous. Because the court's denial of the plaintiff's motion for modification was based, at least in part,[2] on its clearly erroneous finding that an exchange of equity for lifetime alimony had taken place, we are thus "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Thomasi* v. *Thomasi*, 181 Conn. App. 822, 847, 188 A.3d 743 (2018); see also *LeSueur* v. *LeSueur*, 186 Conn. App. 431, 464, 199 A.3d 1082 (2018) ("[a]ppellate courts look at the record, and determine whether the [trial] court either incorrectly applied the law or could not reasonably conclude as it did" (internal quotation marks omitted)).

We are mindful that courts often describe "financial orders appurtenant to dissolution proceedings as entirely interwoven and as a carefully crafted mosaic, each element of which may be dependent on the other"; (internal quotation marks omitted) *Steller* v. *Steller*, 181 Conn. App. 581, 589, 187 A.3d 1184 (2018); and that the parties, both represented by counsel at the time, negotiated the terms that appeared in the agreement that was incorporated into the dissolution judgment. There is nothing in that agreement, however, indicating that the defendant gave up equity or assets in exchange for lifetime alimony,[3] nor was any evidence proffered at the hearing on the motion for modification demonstrating that the parties had made such an exchange,

and it would be improper for this court to speculate as to what might have been exchanged for the terms agreed upon in the parties' agreement.

"Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . Self-represented parties are not afforded a lesser standard of compliance, and [a]lthough we are solicitous of the rights of pro se litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law." (Internal quotation marks omitted.) *Rutka* v. *Meriden*, 145 Conn. App. 202, 218, 75 A.3d 722 (2013). Consequently, "[w]hen a defendant elects to proceed without the benefit of counsel, [she] takes the risk that because of [her] inexperience and lack of knowledge, [she] will suffer disadvantages to which, with proper representation, [she] would not be subject." *State* v. *Lo Sacco*, 12 Conn. App. 481, 496, 531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987). This case is illustrative of the dangers inherent in self-representation. The defendant's statements and closing argument at the hearing did not constitute evidence. See *Lavy* v. *Lavy*, 190 Conn. App. 186, 206 n.13, 210 A.3d 98 (2019) ("arguments of counsel are not evidence"); *Hall* v. *Hall*, supra, 182 Conn. App. 756 ("arguments of a pro se litigant are not proof" (internal quotation marks omitted)). The lack of an evidentiary basis in the record for the court's finding of an exchange of assets or equity for lifetime alimony, on which its ultimate decision denying the plaintiff's motion for modification was based at least in part, compels us to find that the court abused its discretion in denying the plaintiff's motion. Accordingly, a new hearing on the plaintiff's motion for modification is necessary.[4] See *Steller* v. *Steller*, supra, 181 Conn. App. 597–98 (because trial court's decision on motion for modification was based, in part, on clearly erroneous finding, case was remanded for new hearing on motion for modification); *LeSueur* v. *LeSueur*, supra, 186 Conn. App. 446 (same).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The court denied the plaintiff's motion for modification with one exception, which concerned the plaintiff's obligation to pay for the defendant's round trip travel costs to Saint Maarten two times per year. Specifically, in its memorandum of decision, the court stated: "Since the defendant indicated that her accommodation in Saint Maarten was destroyed in Hurricane Irma, the plaintiff may suspend his obligation set out in paragraph 18.3 (10) [of the parties' separation agreement] . . . to afford the defendant two round trips to that island until his repayment of the Medicare penalties has been completed. . . . Other than the suspension of the round trip payments, the plaintiff's motion for modification is denied."

[2] In addition to finding that an exchange of equity for lifetime alimony had taken place, the court also found that the defendant is in poor health, that the plaintiff's financial difficulties could not be attributed to the defendant, that the plaintiff still has resources available to him despite the worsening of his financial state since the dissolution, that his payments to Medicare

should end shortly, that he should ask his sons to assist in repaying their student loans, and that the plaintiff is able to afford out-of-state vacations, while the defendant does not have similar resources available to her.

[3] In fact, the agreement contains a provision that permits a " 'second look' " or "de novo review . . . of alimony when the husband retires," which could occur when he turns sixty-eight, approximately five years after the dissolution judgment was rendered. Further, the defendant acknowledged at oral argument before this court that there was no formal exchange and stated that she "knew in the back of [her] mind" that she "didn't want to disturb" the plaintiff's business because she "wanted [her] alimony," so she "agreed with [her] attorney" to "just go for the alimony."

[4] In light of our determination as to the first two issues raised by the plaintiff on appeal, we need not address the plaintiff's third issue, in which he alleged that the trial court erred in denying his motion for modification of alimony after finding that his income had decreased by approximately 32 percent since the date of the dissolution.

———————————————————