******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

NANCY GIORDANO *v.* RAY GIORDANO
(AC 42497)

Alvord, Moll and Bishop, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court from the judgment of the trial court
granting the plaintiff's motions to modify alimony and for contempt.
Pursuant to the parties' separation agreement, which was incorporated
into the dissolution judgment, the defendant was required to pay the
plaintiff periodic alimony equal to 30 percent of his gross annual compen-
sation, up to an annual maximum limit. Thereafter, the trial court, follow-
ing an evidentiary hearing, determined that the alimony provision was
intended to include payments made to the defendant from certain pen-
sion benefits and, accordingly, granted the plaintiff's motion to modify
the alimony order. The court additionally found the defendant in con-
tempt for his failure to pay alimony, and this appeal followed. *Held*:
1. The defendant could not prevail on his claim that the trial court erred
   in interpreting the separation agreement to include his supplemental
   pension as a basis for a modification of alimony, which was based on
   his claim that the agreement unambiguously did not include that pension
   as part of gross annual compensation: the court correctly determined
   that the alimony provision was ambiguous, and correctly interpreted
   "gross annual compensation" as including the supplemental pension;
   moreover, the language of the agreement provided that the list of pay-
   ments qualifying as "gross annual compensation" was not exhaustive,
   and it was apparent from the record that counsel and the defendant
   contemplated the fact that once he began receiving this supplemental
   pension, that event could serve as a basis for the plaintiff to file a motion
   to modify.
2. The defendant's claim that the trial court erred in failing to interpret the
   separation agreement as distributing the supplemental pension to him
   at the time of dissolution was unavailing; the defendant's argument
   was belied by the facts in the record and arguments of counsel at the
   modification hearing, and the fact that the defendant crossed off the
   reference to the supplemental pension on his financial affidavit, remov-
   ing it from the list of property considered marital assets, led this court
   to conclude that the supplemental pension was neither considered a
   marital asset nor distributed at dissolution.
3. The trial court did not abuse its discretion in modifying the alimony award:
   the court properly found that the alimony provision was modifiable with
   the exception of the annual maximum limit; the alimony provision was
   intended to remain modifiable upon a finding of a substantial change
   in circumstances, because there was no provision stating that alimony
   was nonmodifiable, and the actions taken by the court and counsel
   at the dissolution hearing ensured that the provision would remain
   modifiable; moreover, the court found a substantial change in circum-
   stances, and applied the applicable statutory factors (§ 46b-82); further-
   more, the court did not abuse its discretion as to the amount of alimony
   it ordered because, in order to ensure that the plaintiff received an
   award sufficient to maintain the standard of living she enjoyed prior to
   the dissolution of the marriage, the court modified the alimony award,
   in accordance with the intention of the original alimony order.
4. The trial court improperly granted the plaintiff's motion for contempt:
   although the court found the defendant in contempt for wilfully violating
   the separation agreement's provisions relating to alimony, the court
   also indicated that the agreement was ambiguous as to whether the
   supplemental pension was considered employment related income; this
   court, having agreed with the trial court that the provision was ambigu-
   ous, concluded that the alimony order was not clear and that the defen-
   dant's failure to make payments from it could not be considered a wilful
   violation of an unambiguous order and, therefore, the record did not
   support the court's conclusion that the defendant's failure to pay was
   wilful.

Argued May 27—officially released September 15, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Dennis F. Harrigan*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Michael E. Shay*, judge trial referee, granted the plaintiff's motions to modify alimony and for contempt, and the defendant appealed to this court. *Affirmed in part*; *reversed in part*; *judgment directed.*

*Peter J. Zarella*, with whom, on the brief, was *Gary I. Cohen*, for the appellant (defendant).

*Samuel V. Schoonmaker IV*, with whom, on the brief, were *Wendy Dunne DiChristina* and *Peter M. Bryniczka*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. In this postmarital dissolution matter, the defendant, Ray Giordano, appeals from the judgment of the trial court granting the motions of the plaintiff, Nancy Giordano,[1] for modification and for contempt relating to the defendant's failure to pay alimony. We affirm the judgment of the trial court related to the plaintiff's motion for modification of alimony, and we reverse the court's finding of contempt against the defendant.

The following undisputed facts are pertinent to our consideration of the issues on appeal. The marriage of the parties was dissolved on November 17, 2004. Included in the parties' separation agreement, which was incorporated into the judgment of dissolution, were provisions related to periodic alimony that, in essence, provided for the plaintiff to receive from the defendant a monthly amount equal to 30 percent of the defendant's " 'gross annual compensation' " up to a maximum limit of $150,000 per annum. In particular, the agreement provided the following: "3.1 Commencing as of the first day of December, 2004, the [defendant] shall pay to the [plaintiff], during his lifetime, until her death, remarriage, or cohabitation as defined by [General Statutes § 46b-86 (b)], whichever event shall first occur, as alimony in a sum equal to [30] percent . . . of the [defendant's] 'gross annual compensation' from employment, as hereinafter defined; provided, however, that in no event shall the [plaintiff] receive more than $150,000 per annum as alimony. Accordingly, the [plaintiff] shall not share in the [defendant's] 'gross annual compensation' in excess of $500,000 in any calendar year.

"3.2 Payments pursuant to paragraph 3.1 shall be calculated from the [defendant's] base salary, which is currently $249,000 per annum and payable in equal monthly installments on the first day of each calendar month, in advance. Any payments due to the [plaintiff] from the [defendant's] 'gross annual compensation' in excess of $240,000 per year shall be made within three . . . days of the receipt of such compensation by the [defendant].

"3.3 (a) For purposes of . . . Article III, 'gross annual compensation' shall mean all employment-related payments including, but not limited to, salary, base salary, bonus, draw, distributions, commission payments, severance payments, disability payments, unemployment compensation, and sign-on bonuses received by the [defendant] in cash, by check or by electronic transfer before any deductions, including, but not necessarily limited to, federal, state or municipal income taxes, social security, Medicare, insurance of any kind, or payments made voluntarily by the [defendant] to any defined contribution plan, e.g., a 401 (k) plan or qualified savings plan. 'Gross annual compensa-

tion' shall also include income voluntarily deferred by the [defendant] under a deferred compensation or similar plan and . . . any payments from disability insurance. Any court of competent jurisdiction, upon the motion of either party, shall retain jurisdiction to modify alimony except as provided in paragraph 3.1. The [defendant] shall take no action which has as its purpose the defeating of the [plaintiff's] right to receive alimony.

"(b) In the event that the [defendant] is self-employed or is employed by a privately-held entity where he has significant control over the amount and/or the structuring of his compensation either by virtue of his direct or indirect ownership interest in the entity or by virtue of his position of authority in the entity, a court of competent jurisdiction, upon the motion of either party, shall have continuing jurisdiction to modify the definition of 'gross annual compensation' so as to ensure that both parties will be treated fairly in accordance with the spirit of this Article III."

On December 21, 2016, the plaintiff filed a postjudgment motion for modification and, on February 26, 2018, filed a motion for contempt, both relating to the defendant's retirement from employment and his failure to pay alimony. Thereafter, the court, *Hon. Michael E. Shay*, judge trial referee, conducted an evidentiary hearing during which Judge Shay determined that the alimony provision in the agreement contained ambiguities related to the term "gross annual compensation." Upon consideration of the language of the agreement, the colloquy between counsel and the court, *Hon. Dennis F. Harrigan*, judge trial referee, at the time of the dissolution, and arguments of counsel and oral testimony at the modification hearing, Judge Shay determined that the term "gross annual compensation"—which the agreement further refined to include any compensation from employment—was intended to include the payments currently being made to the defendant from his deferred pension benefits.

Considering the amounts of the parties' respective incomes and expenses, and considering that the original purpose of the alimony provision was to enable the plaintiff to maintain a certain standard of living, the court modified the periodic alimony order to $8100 per month. Additionally, the court found the defendant in civil contempt for his failure to pay alimony, but declined to issue any sanctions based on this finding. This appeal followed.

On appeal, the defendant claims that the trial court erred in (1) failing to interpret the separation agreement as distributing the supplemental pension to the defendant at the time of the dissolution, (2) interpreting the separation agreement to include the supplemental pension as a basis for a modification of alimony, and (3) granting the plaintiff's motion to modify. We review

each of these claims, albeit in a different order in which they are presented.

At the outset, we note that "[o]ur review of a trial court's granting or denial of a motion for modification of alimony is governed by the abuse of discretion standard. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Trial courts have broad discretion in deciding motions for modification." (Citation omitted; internal quotation marks omitted.) *Light* v. *Grimes*, 156 Conn. App. 53, 64, 111 A.3d 551 (2015). To the extent that the defendant has raised legal issues within his overarching claim, we review those claims de novo. See *Rudy's Limousine Service, Inc.* v. *Dept. of Transportation*, 78 Conn. App. 80, 84, 826 A.2d 1161 (2003).

I

The defendant claims on appeal that the trial court erred in interpreting the separation agreement to include his supplemental pension as a basis for a modification of alimony. Specifically, the defendant claims that the separation agreement, in its provisions, unambiguously did not include the supplemental pension as part of "gross annual compensation." In response, the plaintiff claims that the trial court correctly determined that the alimony provision was ambiguous and correctly interpreted "gross annual compensation" as including the supplemental pension. We agree with the plaintiff.

We begin our analysis by setting forth the applicable standard of review and principles of law. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . .

"If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law [and our

review is plenary]. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . .

"Accordingly, [t]he threshold determination in the construction of a separation agreement . . . is whether, examining the relevant provision in light of the context of the situation, the provision at issue is clear and unambiguous, which is a question of law over which our review is plenary. . . . Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. . . . It must be noted, however, that the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Fazio* v. *Fazio*, 162 Conn. App. 236, 243–45, 131 A.3d 1162, cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016).

The following language from the separation agreement is relevant to our consideration of this issue: "3.1 Commencing as of the first day of December, 2004, the [defendant] shall pay to the [plaintiff], during his lifetime, until her death, remarriage, or cohabitation as defined by § 46b-86 (b), whichever event shall first occur, as alimony in a sum equal to [30] percent . . . of the [defendant's] 'gross annual compensation' from employment, as hereinafter defined; provided, however, that in no event shall the [plaintiff] receive more than $150,000 per annum as alimony. Accordingly, the [plaintiff] shall not share in the [defendant's] 'gross annual compensation' in excess of $500,000 in any calendar year. . . .

"3.3 (a) For purposes of . . . Article III, 'gross annual compensation' shall mean all employment-related payments including, but not limited to, salary, base salary, bonus, draw, distributions, commission payments, severance payments, disability payments, unemployment compensation, and sign-on bonuses

received by the [defendant] in cash, by check or by electronic transfer before any deductions, including, but not necessarily limited to, federal, state or municipal income taxes, social security, Medicare, insurance of any kind, or payments made voluntarily by the [defendant] to any defined contribution plan, e.g., a 401 (k) plan or qualified savings plan. 'Gross annual compensation' shall also include income voluntarily deferred by the [defendant] under a deferred compensation or similar plan and . . . any payments from disability insurance. Any court of competent jurisdiction, upon the motion of either party, shall retain jurisdiction to modify alimony except as provided in paragraph 3.1. The [defendant] shall take no action which has as its purpose the defeating of the [plaintiff's] right to receive alimony."

In its memorandum of decision, the court found that the language of the agreement was ambiguous.[2] Upon our review of the relevant provision of the separation agreement, we agree with the court that the language is ambiguous as to what is included in the term "gross annual compensation" and, specifically, whether that term would include income from the defendant's supplemental pension.

We now turn to whether the defendant's supplemental pension is included in the term "gross annual compensation." The defendant, a former executive at General Electric (GE), retired subsequent to the dissolution of the parties' marriage and began receiving this supplemental pension in the amount of approximately $23,000 per month in October, 2016.[3] As noted, paragraph 3.1 of the separation agreement provides that "gross annual compensation" means "income from employment" and, on the basis of our review of the court's colloquy with counsel at the dissolution hearing, we find no fault in the court's conclusion that the supplemental pension was intended to be included within that framework.

First, we note that the language of § 3.3 (a) of the separation agreement provides that the list of payments that qualify as "gross annual compensation" is not exhaustive because the list "[includes], but [is] not limited to" the items that follow. In addition, at the dissolution hearing, the defendant was questioned by counsel for the plaintiff and testified that he understood that the alimony award was subject to modification up to the cap of $150,000 per annum.[4] It is apparent from the record that counsel and the defendant contemplated the fact that once he had retired and had begun receiving this supplemental pension, that event could serve as a basis for the plaintiff to file a motion to modify in order to attempt to receive some of that supplemental pension in the form of alimony. Indeed, counsel for the defendant at the modification hearing invited the court to consider that colloquy in deciding the issue.[5]

Accordingly, we conclude that the court did not

improperly interpret the separation agreement as including the defendant's supplemental pension within the definition of "gross annual compensation."

## II

The defendant also claims on appeal that the court erred in failing to interpret the separation agreement as distributing the supplemental pension to him at the time of dissolution. Specifically, the defendant claims that the court incorrectly relied on parol evidence to rewrite the separation agreement in order to treat the supplemental pension as if it were undistributed property. The plaintiff argues that the defendant's claim is contrary to the position that he took at the modification hearing, and that article II of the separation agreement equally divided all of the defendant's clearly identified employment related assets, but it did not address the supplemental pension. We agree with the plaintiff.

At the modification hearing, the court observed that the defendant had originally listed the supplemental pension as an asset on his financial affidavit, but had thereafter specifically crossed it out and placed his initials next to the change.[6] Additionally, counsel for the defendant at the modification hearing explicitly agreed that the pension had not been distributed. When questioned by the court as to whether the supplemental pension had been divided as property at the time of the marital dissolution, counsel for the defendant remarked that "nobody claims that this asset was ever a marital asset."[7] Further, at the dissolution hearing, the record reflects that counsel for the defendant had asked the defendant if he understood that the supplemental pension was not being divided along with his GE base pension, to which the defendant responded in the affirmative.[8]

The defendant's argument that the supplemental pension had been distributed at the time of dissolution is belied by the facts in the record and the arguments of counsel at the modification hearing. In particular, the fact that the defendant had crossed off the reference to the supplemental pension on his financial affidavit, removing it from the list of property to be considered assets, leads us to the conclusion that the supplemental pension was neither considered a marital asset nor distributed at dissolution. Additionally, the defendant's counsel at the modification hearing repeatedly took the position that the pension was not a marital asset and, thus, the defendant's contradictory argument on appeal is unavailing.

## III

The defendant's final claim as to the modification of alimony is that the trial court erred in a number of ways in granting the motion to modify. Specifically, he claims that (1) "[t]he trial court did not modify anything," (2) "if construed as a modification, the trial court exceeded

its authority," (3) "there was not a sufficient change of circumstances to modify alimony," and (4) "the trial court made errors in setting the modified alimony." The plaintiff responds that the trial court, having found a substantial change in circumstances, did not abuse its discretion in modifying the alimony award. We agree with the plaintiff.

First, with respect to whether the court had authority to modify the alimony order, the court found that the alimony provision was modifiable with the exception of the $150,000 cap on what the plaintiff may receive. We agree with the court's finding on this issue.

"It is a well settled principle of matrimonial law that courts have the authority under . . . § 46b-86 to preclude the modification of alimony awards. . . . Section 46b-86 (a) itself provides in relevant part that [u]nless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. . . . This statute clearly permits a trial court to make periodic awards of alimony nonmodifiable." (Emphasis omitted; internal quotation marks omitted.) *Brown* v. *Brown*, 148 Conn. App. 13, 24–25, 84 A.3d 905, cert. denied, 311 Conn. 933, 88 A.3d 549 (2014).

In the present case, the alimony provision was clearly intended to remain modifiable by a court of competent jurisdiction upon a finding of a substantial change in circumstances. This is evidenced in the record by the fact that there is no provision stating that the alimony provision is nonmodifiable, along with the actions taken by the court and by counsel at the dissolution hearing to ensure that the separation agreement made clear that the alimony provision was to remain modifiable.[9] Therefore, once the court found a substantial change in circumstances, it thereafter had the authority to modify the alimony order. This includes both the authority to modify the amount of the order, as well as the authority to determine whether the supplemental pension is characterized as a percentage of the defendant's earnings; because the percentage provision was not stated as being nonmodifiable, it is, therefore, modifiable. Accordingly, we agree with the trial court's conclusion.

Next, with respect to whether the court erred in finding there to be a substantial change in circumstances as would warrant a modification of the alimony award and, further, whether the amount awarded was an abuse of the court's discretion, we are mindful that § 46b-86 (a) broadly provides that an alimony award may be modified by the court upon a showing of a substantial change in the circumstances of either party, and that a "trial court's discretion is essential" when it determines whether a modification is justified. *Dan* v. *Dan*, 315 Conn. 1, 9, 105 A.3d 118 (2014). We also adhere to the

following legal principles. "Trial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes. If the court considers the relevant statutory criteria when making its alimony and support award, the award may not be disturbed unless the court has abused its discretion." (Internal quotation marks omitted.) *Schwarz* v. *Schwarz*, 124 Conn. App. 472, 485, 5 A.3d 548, cert. denied, 299 Conn. 909, 10 A.3d 525 (2010). "When the initial award [is] not sufficient to fulfill the underlying purpose of the award . . . an increase in the supporting spouse's salary, in and of itself, may justify an increase in the award." *Dan* v. *Dan*, supra, 15–16.

In its memorandum of decision, the court found that there had been a substantial change of circumstances. Specifically, the court found that, "there has been a substantial change of circumstances since the date of the initial order in that, among other things: (a) the assets of both the [defendant] and the [plaintiff] have increased; (b) the [defendant] has retired from his principal employment as of October 1, 2016; and (c) the [defendant's] salary and bonus have ceased." The court also found that, "in addition, the parties stipulated in open court . . . that the receipt by the [defendant] of his supplemental pension would be additional grounds for the [plaintiff] to seek a modification of the alimony order; and that the [defendant] did, in fact, become eligible to commence receipt of payments from the supplemental pension on or about October 1, 2016."

Accordingly, the court, having found a substantial change in circumstances in light of the termination of the defendant's salary and bonuses, in conjunction with the vesting of his supplemental pension, thereafter applied the factors in General Statutes § 46b-82, ultimately awarding $8100 per month to the plaintiff in alimony. We are not persuaded that the court's action in this regard would constitute an abuse of its discretion.

With regard to the defendant's claim that the amount of alimony ordered was an abuse of discretion, we also disagree. As found by the trial court, the dissolution court's original alimony order was intended to sustain a certain standard of living for the plaintiff for the remainder of her or the defendant's life. This is further evidenced by the transcript of the dissolution hearing, in which counsel for the plaintiff states: "The parties have agreed that [the plaintiff] is going to receive [30] percent of [the defendant's] gross annual compensation from employment as alimony and it's payable during his lifetime, her lifetime, until her death or marriage or cohabitation." In order to ensure that the plaintiff received an award sufficient to maintain the standard of living she enjoyed prior to the dissolution of her marriage to the defendant; see *Dan* v. *Dan*, supra, 315

Conn. 15–16; the court, after identifying a substantial change in circumstances, modified the alimony award in accordance with the intention of the original order. Accordingly, we conclude that the court did not abuse its discretion in awarding $8100 per month to the plaintiff.

IV

Finally, with regard to the court's granting of the plaintiff's motion for contempt against the defendant, the defendant argues that the motion for contempt should have been denied because there was no basis for the court to conclude that the parties intended that the supplemental pension would be part of the defendant's "gross annual compensation" at the time of dissolution. While we disagree with the defendant's reasoning, we agree that the motion for contempt should have been denied.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [defendant] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . A finding that a person is or is not in contempt of a court order depends on the facts and circumstances surrounding the conduct. The fact that an order has not been complied with fully does not dictate that a finding of contempt must enter. . . . [It] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Bauer* v. *Bauer*, 173 Conn. App. 595, 600, 164 A.3d 796 (2017).

"Guided by the principles that limit our review, our analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693, 935 A.2d 1021 (2007).

In its memorandum of decision, the court found the defendant in contempt for wilfully violating the separation agreement's provisions relating to alimony. The court stated: "The [defendant] admits that he failed to

make monthly payments commencing in January, 2018 and ending in May, 2018, but excused his failure based upon the fact that the compensation on which he based the lump sum payment in June was subject to the upfront withholding of taxes. . . . Nevertheless, he did have available alternate sources with which to pay something. Moreover, the agreement provides that where a payment is based upon income in excess of $240,000 per annum, he has an obligation to make his required payment to her within three days of receipt. The evidence is clear that he did not make such timely payment, notwithstanding the fact that he had the wherewithal to do so." The court then went on to find that "the evidence supports a finding that the underlying order that periodic alimony be paid on a monthly basis was clear and unambiguous; that the income from the supplemental pension is an 'employment related payment'; that the [defendant] failed and neglected to pay the monthly installments for the months of January through May, 2018; that the [defendant] had the means to make said payments; that his choice not to do so was wilful and amounts to contempt; that his lump sum payment of $150,000 on June 8, 2018, is a mitigating factor; and that the [plaintiff] failed to demonstrate any credible evidence of substantial harm as a result thereof that would warrant the imposition of sanctions."

Also in its memorandum of decision, as well as during the hearing on the motion for modification, however, the court expressed its view that the agreement was ambiguous as to whether the supplemental pension was considered employment related income for purposes of its inclusion in the alimony pool. In particular, at the hearing, the court stated: "If [the separation agreement] was perfect you guys wouldn't be here today. If it was so clear, if it was not ambiguous you wouldn't be here today." The court's determination that the provision at issue was ambiguous, with which we agree, leads to the conclusion that the alimony order was not clear and, therefore, that the defendant's failure to make payments from it could not be considered a wilful violation of an unambiguous order. In the absence of a clear and unambiguous order underpinning the court's finding of contempt, and on the basis of the court's own finding of ambiguity within the alimony order, we conclude that the record does not support the court's conclusion that the defendant's failure to pay the then existing alimony order was wilful, and, therefore, that the standard for a finding of contempt was not satisfied.

The judgment is reversed only as to the finding of contempt and the case is remanded with direction to deny the plaintiff's motion for contempt; the judgment as to the modification of alimony is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff is now known as Nancy Evans.

[2] In its memorandum of decision, the court, *Hon. Michael E. Shay*, judge trial referee, explained that, "[w]hat was not agreed [to at the time of

dissolution], and which remains in dispute, is whether or not the supplemental pension is to be treated as 'gross annual compensation' subject to a claim by the [plaintiff] for alimony." In addition, at the modification hearing, the court stated: "If [the separation agreement] was perfect you guys wouldn't be here today. If it was so clear, if it was not ambiguous you wouldn't be here today."

[3] At the modification hearing, the defendant testified that although the supplemental pension went into pay status on October 1, 2016, following his official retirement, he did not receive any cash flow from the supplemental pension until approximately five months later, due to a procedure by which GE prepays the retiree's Federal Insurance Contributions Act (FICA) and Medicare contributions, and the retiree repays GE with the first few payments of the supplementary pension proceeds.

[4] During this questioning, the following exchange occurred between the plaintiff's counsel and the defendant:

"Q. You understand that the alimony is subject to modification but that [the plaintiff] can never seek more than $150,000 dollars per year? Correct?

"A. Yes.

"Q. Okay. And, that, if for example, if you should retire and received supplemental pension payments which haven't been dealt with in this divorce, that there is the possibility that she may come back to court and seek alimony payments based on the fact that you're getting the supplemental pension payments?

"A. I understand that she always has the right to come back to court to seek some change in what we're agreeing to today."

[5] At the modification hearing, counsel for the defendant stated: "[The plaintiff's counsel] suggests that Your Honor, and I agree, should review the transcript of the proceedings before Judge Harrigan and the terms of the separation agreement that were ultimately approved by the court. And I respectfully submit that the transcript and the separation agreement both confirm . . . that the plaintiff's claim to be awarded a share of [the defendant's] benefits under the supplemental pension plan to which he did not become eligible until postjudgment that that source of income is not one of the sources of income that is enumerated in the separation agreement and the judgment . . . ."

[6] In its memorandum of decision, the court explained that the defendant had originally included the supplemental pension as an asset on his October 26, 2004 financial affidavit, but later crossed the entry out after concluding that his interest in the pension had not yet vested and, therefore, that the supplemental pension was not marital property subject to equitable division. The court then remarked: "In this he was clearly mistaken, as a then recent decision of the Connecticut Supreme Court clearly and unambiguously held that 'unvested pension benefits are property for equitable distribution . . . .' *Bender* v. *Bender*, 258 Conn. 733, [754, 785 A.2d 197] (2001). This holding was further elucidated in *Reville* v. *Reville*, 312 Conn. 428, 451, [93 A.3d 1076] (2014), when the court held that 'any retirement or employment benefit potentially receivable by a party to a dissolution action should be disclosed on that party's financial affidavit along with all known details as to its value, vesting requirements and current status.' [Emphasis omitted.] Despite this, the supplemental pension, which ultimately did vest, was neither divided nor offset by other marital property at the time of the dissolution."

[7] Additionally, in his opening remarks to the court, the defendant's counsel at the modification hearing stated: "I think that Your Honor will find, after hearing the evidence that [the defendant's] interest, if any, in this supplemental pension plan did not even spring up as an asset until he qualified as a participant at some time long after the entry of the dissolution decree because the terms of this particular plan require that in order for . . . a GE employee to be eligible for benefits under the plan there are two criteria that must be met . . . and neither of those criteria had been met as of the date of the dissolution in 2004."

[8] At the dissolution hearing, the following exchange occurred between the defendant and his counsel on redirect examination:

"Q. . . . [P]ursuant to paragraph 2.7, you are dividing your GE pension plan. Correct?

"A. The base plan that is subject to a [qualified domestic relations order]?

"Q. Yes.

"A. Yes.

"Q. Okay. And you understand that that's just the base plan and it does not include the supplemental pension plans?

"A. That's correct.

"Q. Okay."

[9] At the dissolution hearing, counsel for both parties and the court engaged in the following colloquy:

"[The Defendant's Counsel]: . . . So, just to be clear they're agreeing that the alimony can be modified but that the terms in paragraph 3.1 which state that [the plaintiff] is not to receive more than $150,000 a year in alimony is nonmodifiable.

"The Court: I think that that's clear and also that it's the alimony that's modifiable.

"[The Plaintiff's Counsel]: Correct.

"[The Defendant's Counsel]: Correct.

"The Court: Not the definition."

—————————————————