******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# L. K. *v.* K. K.*
## (AC 45849)

Clark, Seeley and Palmer, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, filed a motion to modify his unallocated alimony and child support obligation. The trial court denied the motion, and the defendant appealed to this court. *Held*:

1. This court rejected the argument of the defendant's counsel, raised for the first time at oral argument, that the trial court lacked subject matter jurisdiction over the defendant's motion to modify his unallocated alimony and child support obligation: although counsel stated that the trial court lacked subject matter jurisdiction to enter orders regarding an adult child, which statement appeared to rest on the general rule that a parent's legal obligation to support a child terminates when the child attains the age of eighteen, the trial court did not enter any child support orders regarding an adult child but denied a motion to modify the defendant's unallocated alimony and support obligation, which stemmed from a written agreement that he had voluntarily entered into with the plaintiff and which was deemed fair and equitable and was approved by the trial court.

2. The defendant could not prevail on his claim that the trial court abused its discretion by failing to address his claim that a reduction in the child support component of his unallocated alimony and child support obligation was warranted because one of the parties' three children had reached the age of majority: the trial court clearly explained that the issue of one of the parties' children reaching the age of majority was not before it because that issue had not been raised in the motion to modify that was before the court.

3. The trial court did not abuse its discretion in denying the defendant's motion to modify by declining to consider certain financial evidence submitted by the defendant: although the defendant argued that the trial court ignored his income and the information set forth on his financial affidavit, it was clear that the court, instead, did not credit that information; moreover, contrary to the defendant's assertions, the trial court was not required to credit the defendant's updated financial affidavit

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

and, therefore, the trial court's findings with respect to the defendant's assertion that he suffered a reduction in income were not clearly erroneous, as they were based on the evidence and its credibility determinations, which this court would not disturb.

Argued January 11—officially released June 18, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Tindill, J.*, rendered judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court, *Sheldon*, *Elgo* and *Stevens*, *Js.*, which reversed the trial court's judgment as to the financial orders and remanded the case to that court for further proceedings; thereafter, the court, *M. Moore, J.*, denied the defendant's motion to modify unallocated alimony and child support, and the defendant appealed to this court. *Affirmed.*

*William W. Taylor*, with whom, on the brief, was *K. K.*, self-represented, for the appellant (defendant).

*Igor G. Kuperman*, for the appellee (plaintiff).

*Opinion*

SEELEY, J. In this postjudgment dissolution matter, the defendant, K. K.,[1] appeals challenging the judgment of the trial court denying his motion to modify the amount of unallocated alimony and child support that he is obligated to pay to the plaintiff, L. K. On appeal, the defendant raises various claims concerning the denial of his motion to modify, which we distill to the following: (1) the court, in its written order denying the motion to modify, improperly failed to address the defendant's

---

[1] At the time the defendant filed this appeal and his appellate briefs, he was acting in a self-represented capacity. At oral argument before this court, however, he was represented by counsel, who also had provided representation to the defendant, at times, concerning various postdissolution matters in this case.

claim that a reduction in the child support component of the unallocated order was warranted due to the fact that one of the parties' three children had reached the age of majority, and (2) the court abused its discretion in denying the motion to modify by ignoring the tax returns, financial statements and other financial documents that had been submitted into evidence.[2] We disagree and affirm the judgment of the court.

The following facts and procedural history guide our resolution of this appeal. The plaintiff and the defendant were married on July 19, 1997, and they have three children together. Their marriage was dissolved by a judgment dated June 21, 2016. Pursuant to that judgment, the defendant was ordered to pay unallocated alimony and support to the plaintiff in the amount of $12,500 per month "until the death of either party, the plaintiff's remarriage, or November 3, 2025, whichever [occurred] first," and the duration and amount to be paid were nonmodifiable by either party. In making that order, the court indicated that it was deviating from the presumptive support amount set forth in the child support guidelines "based on the extraordinary disparity in income and the provision of alimony."

The defendant appealed from the dissolution judgment to this court, arguing, inter alia, that the court's

_____

[2] We note that the defendant, in his principal appellate brief, also raises the following claim: "The court's order fails to address the issue of the court's prior order dated July 5, 2022, now enforcing an order, which it well knows by the facts in evidence, that is not in accord with the Connecticut child support guidelines, nor [General Statutes §] 46b-84." That statement of the claim is followed by three paragraphs of analysis, which concern the modification of an order of unallocated alimony and child support when a child attains the age of majority. It is not clear from that analysis, however, what order the defendant is referring to when he argues that the "the court's order fails to address" the court's July 5, 2022 decision denying the motion to modify. Nonetheless, this purported third claim on appeal seems to be related to, and subsumed within, the defendant's first claim. For that reason, we do not analyze it separately.

order for the payment of nonmodifiable, unallocated alimony and child support constituted an abuse of its discretion in that it precluded reductions based on each child attaining the age of majority. This court agreed, concluding in the prior appeal[3] that the trial court abused its discretion in making its order of unallocated alimony and child support nonmodifiable as to term and amount.[4] Therefore, the judgment was reversed only as to the financial orders and the case was remanded for further proceedings.

Following the remand order from this court, the trial court scheduled a hearing for May 2 and 3, 2019, to address the financial issues. On May 2, the first day scheduled for the hearing, the parties entered into a written agreement that resolved the financial issues. The agreement provided in relevant part: "The [defendant] will continue to pay unallocated alimony and child support with the next payment beginning on May 23, 2019, in the amount of [$12,500] monthly for a period of three years. . . . After three years, he will pay unallocated child support and alimony at the rate of [$7500] per month or until their youngest son is eighteen years old (last payment to be made on October 23, 2025)." The agreement incorporated other provisions from the June 21, 2016 dissolution judgment and provided that "[a]ll other orders not incorporated in this agreement from the June 21, 2016 [dissolution judgment] shall remain null and void." (Emphasis omitted.) The agreement further provides: "The parties have entered into

---

[3] Because the names and identities of the parties are set forth in the prior appeal in this matter, which was decided prior to the issuance of a protective order, we do not include an official citation to our decision in that prior appeal in accordance with our obligation under federal law to protect the identity of any person or persons protected by a protective order. See 18 U.S.C. § 2265 (d) (3) (2018).

[4] In the prior appeal, this court also determined that the trial court erroneously calculated the defendant's presumptive child support obligation on the basis of his earning capacity, rather than his actual income.

this agreement freely and voluntarily; [t]he parties find this agreement to be fair and equitable under the circumstances; [and] [t]he parties find this agreement to be in the best interests of their minor children." The court approved the agreement, which was made an order of the court.

On January 22, 2020, the plaintiff filed a motion for contempt, claiming that the defendant was late in making two payments and that he also had failed to pay 50 percent of all unreimbursed medical expenses for the children, as required by their agreement.[5] The next day, January 23, 2020, the defendant filed the motion to modify that is the subject of this appeal—motion number 432 on the trial court docket (motion to modify 432)—seeking a modification of his unallocated alimony and child support obligation based on a substantial change in circumstances. The defendant filed the motion in a self-represented capacity by filling out a court form. On the form, he checked the box indicating a substantial change in circumstances, with a handwritten notation stating, "[i]n addition to the attach[ed], the motion of contempt in reference to taxes paid on unallocated alimony [and] child support need[s] to be addressed." He also checked the boxes indicating that he was seeking an increase and decrease in child support, as well as a decrease in alimony. Attached to the form is a written motion, which sets forth the following reasons why the defendant was seeking a modification of his unallocated alimony and child support obligation: (1) "Business partner/producer, George Goettlemann, has called the sale of his original book of business"; (2) "Technology upgrades [related to the defendant's business] had to be made immediately. All computers

_____

[5] The plaintiff also filed two other motions for contempt that were considered by the court along with the defendant's motion to modify: one that was filed on January 24, 2020, and another that was filed on November 5, 2020.

are not supported by Microsoft 2007 and had to be upgraded to Microsoft 2010. As well as scanner and software upgrades. Total estimates $25,000"; (3) "Business debt needs to be paid. It has been accruing interest"; (4) "My staff has been completely overworked since 2014. Contingency compensation has decreased 37.5 [percent] among main employees. They are asking for salary increases and better benefits. We need to hire additional employees to relieve workload"; (5) "My personal income has declined"; (6) "We have outstanding fiduciary accounts who have defaulted on premium payments, totaling $30,000 in 2019"; (7) "My credit has been ruined, due [to] the plaintiff not paying the mortgage on the [marital] home . . . for [seventeen] months"; and (8) "My personal reputation has been defamed and ruined in conjunction with the plaintiff . . . using numerous protective order [statutes] and creating false allegations that were subsequently published on the Internet. Moreover, this has directly affected my business . . . ."

A remote hearing on the plaintiff's motions for contempt and the defendant's motion to modify his unallocated alimony and child support obligation commenced on April 8, 2021. The hearing continued, in person, on two more dates—March 17 and April 29, 2022, after which the parties filed simultaneous posthearing briefs on May 31, 2022, as ordered by the court. In a written order dated July 1, 2022, the court denied the defendant's motion to modify and granted in part the plaintiff's motions for contempt. Thereafter, the defendant filed a motion to reargue and reconsider, which the court denied on August 11, 2022. The defendant subsequently filed a second motion to reargue and reconsider, which the court also denied. This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before we address the defendant's claims on appeal, we set forth our well established standard of review in family matters. We review the trial court's judgment denying the defendant's motion to modify his unallocated alimony and child support obligation under an abuse of discretion standard. See *Berman* v. *Berman*, 203 Conn. App. 300, 303, 248 A.3d 49 (2021). "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *De Almeida-Kennedy* v. *Kennedy*, 224 Conn. App. 19, 29–30, 312 A.3d 150 (2024).

"General Statutes § 46b-86 governs the modification of an alimony or child support order after the date of a dissolution judgment. Section 46b-86 (a) provides that a final order for alimony or child support may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. Under that statutory provision, the party seeking the modification

bears the burden of demonstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. . . .

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification. . . . Thus, [w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the [General Statutes § 46b-84] criteria, make an order for modification. . . . A finding of a substantial change in circumstances is subject to the clearly erroneous standard of review. . . . *Flood* v. *Flood*, 199 Conn. App. 67, 77–78, 234 A.3d 1076, cert. denied, 335 Conn. 960, 239 A.3d 317 (2020).

"Moreover, [i]t is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable

construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . *Giordano* v. *Giordano*, 200 Conn. App. 130, 136, 238 A.3d 113, cert. denied, 335 Conn. 970, 240 A.3d 286 (2020); see also *Winthrop* v. *Winthrop*, 189 Conn. App. 576, 581–82, 207 A.3d 1109 (2019)." (Internal quotation marks omitted.) *Berman* v. *Berman*, supra, 203 Conn. App. 304–305.

I

We first address an argument raised by the defendant's counsel during oral argument before this court. Specifically, at the end of his rebuttal argument, the defendant's counsel raised an issue related to subject matter jurisdiction that had not been briefed by the defendant, asserting that the trial court lacked subject matter jurisdiction to "enter orders [regarding] an adult child." According to the defendant's counsel, the case must be remanded on that issue. We do not agree.

We first note that "[a]ppellate courts generally do not consider claims raised for the first time at oral argument." (Internal quotation marks omitted.) *State* v. *Cicarella*, 203 Conn. App. 811, 817 n.5, 251 A.3d 94, cert. denied, 337 Conn. 902, 252 A.3d 364 (2021); see also *Alexandre* v. *Commissioner of Revenue Services*, 300 Conn. 566, 586 n.17, 22 A.3d 518 (2011) (" 'claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing court' "). Nevertheless, we address this issue "because [u]nlike jurisdiction over the person, subject matter jurisdiction cannot be created through consent or waiver. . . . Once the question of lack of jurisdiction is raised, it must be disposed of no matter in what

form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *State* v. *Booker*, 28 Conn. App. 34, 39, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992), cert. denied, 507 U.S. 916, 113 S. Ct. 1271, 122 L. Ed. 2d 666 (1993); see id., 38–39 (addressing issue of subject matter jurisdiction raised for first time at oral argument before reviewing court).

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *O'Bryan* v. *O'Bryan*, 67 Conn. App. 51, 53–54, 787 A.2d 15 (2001), aff'd, 262 Conn. 355, 813 A.2d 1001 (2003). "[T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case. . . . [B]ecause [a] determination regarding . . . subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Jefferson Solar, LLC* v. *Dept. of Energy & Environmental Protection*, 224 Conn. App. 688, 698, 313 A.3d 514 (2024).

"[T]he Superior Court is a general jurisdiction tribunal with 'plenary and general subject matter jurisdiction over legal disputes in "family relations matters" ' under General Statutes § 46b-1"; *Sousa* v. *Sousa*, 322 Conn. 757, 776–77, 143 A.3d 578 (2016); which includes alimony and support. *Amodio* v. *Amodio*, 247 Conn. 724,

729, 724 A.2d 1084 (1999); see also *Hepburn* v. *Brill*, 348 Conn. 827, 842–43, 312 A.3d 1 (2024). Our Supreme Court previously has explained that § 46b-1, together with General Statutes § 46b-86 (a), which "provides the trial court with continuing jurisdiction to modify support orders," provide a trial court with subject matter jurisdiction over a motion to modify a child support order. *Amodio* v. *Amodio*, supra, 729.

Additionally, we also recognize that, "[a]s a general matter, it is settled that the statutory obligation of a parent to support a child normally terminates when the child attains the age of majority, which currently is eighteen."[6] *Loughlin* v. *Loughlin*, 280 Conn. 632, 654, 910 A.2d 963 (2006). Thus, "a court may issue support orders only for minor children under the age of eighteen . . . ." Id., 660; see also *Hughes* v. *Hughes*, 95 Conn. App. 200, 208–209, 895 A.2d 274 ("[t]he statutory grant of jurisdiction to the Superior Court in matters relating to child support incident to the dissolution of a marriage likewise expressly circumscribes the court's jurisdiction to orders involving only minor children" (footnote omitted; internal quotation marks omitted)), cert. denied, 280 Conn. 902, 907 A.2d 90 (2006); *Lowe* v. *Lowe*, 47 Conn. App. 354, 357, 704 A.2d 236 (1997) (" '[a]bsent . . . a written agreement by the parties, the court does not have jurisdiction to order payment of child support

---

[6] There are two notable exceptions to this rule pertaining to postmajority support. First, "under General Statutes § 46b-56c (b), (c) and (e), a court may issue an educational support order for college age children upon a motion of a party and after making certain findings." *Loughlin* v. *Loughlin*, 280 Conn. 632, 657, 910 A.2d 963 (2006). Second, under "General Statutes § 46b-66 (a) . . . if the parties to a dissolution action submit to the court a written agreement providing for the care, education, maintenance or support of a child beyond the age of eighteen and the court finds the agreement to be fair and equitable, it may incorporate it by reference into the order or decree of the court." Id., 658. "Thus, [i]n the absence of a statute or agreement providing for postmajority assistance . . . a parent ordinarily is under no legal obligation to support an adult child." (Internal quotation marks omitted.) Id.

beyond the age of majority and may not enforce such an order' ").

Our resolution of this claim requires little discussion. First, there is no question that the trial court in the present case had subject matter jurisdiction over the defendant's motion to modify his unallocated alimony and child support obligation. See *Amodio* v. *Amodio*, supra, 247 Conn. 729. The defendant's claim appears to rest on the general rule that a parent's legal obligation to support a child terminates when the child attains the age of eighteen. As stated previously in this opinion, at the close of oral argument before this court, the defendant's counsel asserted that the trial court lacked subject matter jurisdiction to "enter orders [regarding] an adult child." In the present case, however, the court did not enter any child support orders regarding an adult child; rather, it denied a motion to modify the defendant's unallocated alimony and child support obligation. Significantly, the defendant's child support obligation stems from a written agreement that he voluntarily had entered into with the plaintiff, which was deemed fair and equitable and was approved by the court. If, and to whatever extent, that agreement does provide for postmajority support for the children,[7] under General Statutes § 46b-66 trial courts have "jurisdiction to enforce written provisions in dissolution agreements, incorporated into court orders, for the care, education, maintenance or support of a child beyond the age of eighteen . . . ." (Internal quotation marks omitted.) *Walsh* v. *Jodoin*, 283 Conn. 187, 205 n.21, 925 A.2d 1086 (2007); see *Tarbox* v. *Tarbox*, 84 Conn. App. 403, 410, 853 A.2d 614 (2004) ("§ 46b-66 permits parents to agree in writing to provide child support for a child beyond the age of eighteen years"); see also footnote 6 of this opinion. We, therefore, reject

---

[7] See part II of this opinion.

the jurisdictional claim raised by the defendant's counsel at oral argument and turn to the claims raised by the defendant in this appeal.

## II

We next address the defendant's claim that the court, in its written order denying the motion to modify, improperly failed to address his claim that a reduction in the child support component of the unallocated order was warranted because one of the parties' three children had reached the age of majority. We disagree.

The following additional facts and procedural history are relevant to this claim. At the outset of the remote hearing that took place on April 8, 2021, at which the defendant appeared in a self-represented capacity, the court sought to clarify the motions that were before it at the hearing. In addition to several motions for contempt filed by the plaintiff, the court indicated that the defendant's motion to modify 432 was one of the motions to be addressed at the hearing. When the court asked the defendant what he had to say about "what motions we are addressing today," the defendant responded by referencing an amended motion to modify that he had filed on April 5, 2021, just three days prior to the hearing, which is motion number 460 on the trial court docket (motion to modify 460). Thereafter, the following colloquy transpired:

"The Court: Sir, we can't hear a motion that you filed on [April 5] today. Okay.

"[The Defendant]: Well, but—

"The Court: You can't file a motion—hold on, sir.

"[The Defendant]: Yeah.

"The Court: —three days before the hearing and expect [the] plaintiff and [the] plaintiff's counsel to be prepared to defend whatever your allegations are on a

motion that, from what I understand, hasn't even been served yet. You don't have a date on the—

"[The Defendant]: It's been served.

"The Court: Okay. . . .

"[The Defendant]: It was served on April 5th . . .

"[The Plaintiff's Counsel]: Your Honor, it has been served . . . upon the plaintiff on April 5th and filed on April 6th, and I got it, I believe, either yesterday at night or today in the morning.

"The Court: Okay. And, sir, do you have a date on the motion, a date, a citation date?

"[The Defendant]: That it was served?

"The Court: No. . . . That you need to appear for the . . . modification. . . .

"[The Defendant]: No, not yet.

"The Court: Okay.

"[The Defendant]: Okay. But it's pretty much the same motion, except there's a few other issues that have developed.

"The Court: Well, sir, *we are not going to hear the few other issues* that developed today. We will hear the motion for modification, which is motion 432, but not the motion for modification that you filed two or three days ago, okay? . . .

"[The Defendant]: . . . Judge . . . I am asking you that it all be heard. It's not . . . you guys are aware of some of my health issues. You know, my daughter is going to be eighteen years old, so child support issues can be addressed, and then there's some [COVID-19] issues. The only thing that—they don't even have to prepare for it. I can prove it. It's just to show how much business I have lost because of [COVID-19].

"[The Plaintiff's Counsel]: Your Honor, I will object. . . . I will object to . . . obviously not to the questions about . . . [COVID-19] and all of that. We can definitely—because it's part of an ongoing situation with the defendant. But the issue that the defendant raises with respect to the kids turning a certain age is a completely separate issue from anything and everything that he was raising before. And it requires a . . . separate showing of evidence because, Your Honor, I believe this particular factor has been addressed in the original agreement between the plaintiff and the defendant. So, as far as the defendant is claiming new issues that were not raised previously, Your Honor, that will require a separate hearing and separate preparation.

"The Court: So, sir, did you raise this issue previously in your motion for modification about your daughter turning eighteen?

"[The Defendant]: Well, the reason why—Your Honor, the reason why I did not, because, when I put in the original motion over a year ago, my daughter wasn't—she was a year and change away from being eighteen. Now that, because of [COVID-19] and because of . . . these motions getting delayed, now my daughter is eighteen. So, there isn't much to debate. She is eighteen. We have a, you know, a child . . . an amended child form and there is really nothing to debate here. She is eighteen and she is going to be eighteen. And, you know, child support should be adjusted when they are eighteen. It's not very complicated. It's standard procedure among—

"The Court: Well, sir, here's the issue . . . . You're seeking a modification today, but you haven't filed an updated financial affidavit.

"[The Defendant]: Well, I just did. I did. I filed it just recently.

"The Court: When? . . . There's no financial affidavit in your file. There is no financial affidavit in the clerk's office.

* * *

"The Court: . . . You are representing yourself, okay, and you have been for quite some time. There are trial management, hearing management orders that you need to produce these documents not today, but a minimum of five days prior to the hearing date. Okay. Today is not five days prior to the hearing date. There is no financial affidavit in the courthouse. I had the clerk look yesterday. I had the clerk look today." (Emphasis added.)

The court concluded the discussion by stating that, with respect to the defendant's motion to modify 460 that he "just filed that is pending," the defendant would "get a hearing date for that, at which point [he could] proceed with [his] motion for modification." The court further stated: "[T]his is what we are going to do. Since, again, I don't have your financial affidavit, sir, what you are going to do is [speak with an attorney about what your issues are as you have indicated] and then the next time everyone is back for the modification, sir, provided your financial affidavit has been filed, then we can address it after you have an opportunity to speak with [an attorney]." Thereafter, the hearing on that day proceeded forward with respect to the plaintiff's motions for contempt.

The hearing resumed on March 17, 2022, and the defendant, represented by counsel, testified regarding motion to modify 432 that he had filed in January, 2020. Specifically, the defendant testified that he has health issues stemming from the fact that he had contracted COVID-19 twice, that he has an aortic aneurysm that is being monitored, and that he has a nodule in his thyroid that might need to be removed. He also testified

that, as a result of his physical ailments and COVID-19, he was not able to do certain things for a long period of time, and that he no longer works forty hours per week, due, in part, to the fact that he had not been feeling well and, in part, because his office was closed. The defendant testified further that he has not seen his children in a long time, that his business has been affected in a number of ways by the COVID-19 pandemic, and about various loans and business transactions. In support of his testimony, the defendant offered into evidence a number of financial documents, including personal and business tax returns for various years, and an updated financial affidavit. When asked what had caused him to file his motion to modify in January, 2020, the defendant responded that he could not afford to keep paying the amount set for unallocated alimony and child support because he was getting further in debt and having trouble keeping up with other things that needed to be paid and because he had lost business in January, 2020, which was further compounded by the onset of the COVID-19 pandemic shortly thereafter. The defendant also testified about why he had entered into the May 2, 2019 agreement to continue paying the plaintiff $12,500 monthly, the same amount ordered in the dissolution judgment that had been reversed on appeal.[8] At no point during the testimony of the defendant or the plaintiff concerning motion to modify 432 was anything mentioned about any of the children reaching the age of majority,[9] nor was there any mention

[8] Specifically, the defendant testified, inter alia, that he made the decision to do so (1) to clarify tax responsibilities in the unallocated order, (2) because it gave him the opportunity to negotiate a drop to $7500, and (3) in the hope that it would resolve some issues with respect to their children so that he could see them.

[9] In fact, during the hearing on March 17, 2022, the defendant testified that he was under stress because his children do not talk to him anymore. He was asked when the last time was that he had any access with his children, to which he replied that he had not seen his son since the son graduated from middle school in 2021. That prompted the defendant's counsel to ask, "[h]ow old are your kids?" The defendant responded only that

of the defendant's motion to modify 460, in which that issue had been raised. In his posthearing brief, the defendant made a cursory reference to this issue when he asserted: "To date, the number of minor children has reduced from three to one (see current child support guidelines worksheet, Def. Trial Ex. C)," and that "[t]he child support order must be reduced from $603 a week . . . to $297 per week . . . as only one child remains a minor."

In its July 1, 2022 written order denying the defendant's motion to modify, the court expressly set forth the motions that were covered by the order and referenced motion to modify 432, the defendant's January 23, 2020 motion to modify; the written order does not reference motion to modify 460, the defendant's amended motion to modify that was filed on April 5, 2021, in which the defendant sought a modification on the ground that one of his children had reached the age of majority. As a result, the court did not address that ground in deciding the January, 2020 motion to modify. The defendant subsequently filed a motion to reargue and reconsider the denial of his motion to modify, in which he argued, inter alia, that the court improperly failed to address the issue of whether his unallocated alimony and child support obligation had to be reduced due to one of the children reaching the age of majority.

On August 11, 2022, the court denied the defendant's motion to reargue and for reconsideration. In its written order, the court stated: "The defendant's motion [to modify] 432 fails to request a modification of unallocated alimony and child support based on a child reaching the age of majority. '[P]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed,

_____

his son was fifteen and did not mention anything about any of the other children reaching the age of majority.

we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . It is fundamental in our law that the right of a party to recover is limited to the allegations in his pleading. Thus, it is clear that the court is not permitted to decide issues outside of those raised in the pleadings.' *Wheeler* v. *Beachcroft, LLC*, 210 Conn. App. 725, 753, 271 A.3d 141 (2022).

"Practice Book § 25-26 (e) provides in relevant part: 'Each motion for modification shall state the specific factual and legal basis for the claimed modification . . . .' In *Prial* v. *Prial*, [67 Conn. App. 7, 12–13, 787 A.2d 50 (2001)], the Appellate Court held [that] it was an abuse of discretion for the court to consider grounds not raised in a motion to modify financial orders. . . .

"At the commencement of the hearing on [April 8, 2021], the defendant was self-represented. Motion [to modify] 460 [which raised the issue of one of the children reaching the age of majority] was filed by the defendant three (3) days prior to the commencement of the hearing. The court informed the defendant [that] motion [to modify] 460 was not being heard by the court because the plaintiff was not provided adequate notice that the motion was before the court. The self-represented defendant failed to request a continuance and the hearing proceeded on the defendant's motion [to modify] 432 . . . ." (Citation omitted.)

Despite the court's clear explanation as to why the issue of one of the parties' children reaching the age of majority was not before it with respect to the defendant's motion to modify 432, the defendant, nonetheless, filed another motion to reargue and for reconsideration raising the same argument about one of his children reaching the age of majority. The court summarily denied the motion.

On appeal, the defendant makes a number of arguments in support of his claim that the court erred in failing to address the issue of one of his children reaching the age of majority and to modify the child support portion of his unallocated alimony and child support obligation accordingly. First, he argues that he "clearly checked the box on the court form ([motion to modify] 432) that he was requesting a 'decrease in child support,' " and that, as a self-represented party at that time, he should have been allowed deference or leeway. He also asserts that, at the hearing, he "introduced *evidence, by way of testimony,* regarding the ages of his children," as well as a child support guidelines worksheet, which included the children's names and dates of birth. (Emphasis added.) Next, he argues that Connecticut law "mandates" that the court take this fact into account and that, by law, he is entitled to a reduction in the child support portion of his unallocated alimony and child support obligation. Finally, the defendant argues that, under Connecticut law, there was a substantial change in circumstances as a result of one of his children turning eighteen years old.

Before we address the defendant's claims, we first set forth general principles governing this issue. "Our rules of practice state what a party must include in any motion to modify custody. Motions to modify custody are governed by Practice Book § 25-26. Section 25-26 (e) provides: 'Each motion for modification shall state the specific factual and legal basis for the claimed modification and shall include the outstanding order and date thereof to which the motion for modification is addressed.' " *Petrov* v. *Gueorguieva,* 167 Conn. App. 505, 513, 146 A.3d 26 (2016). The purpose of a pleading "is to limit the issues at trial, and . . . pleadings are calculated to prevent surprise. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found

but not averred cannot be made the basis for a recovery. . . . Thus, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings. . . . A judgment in the absence of written pleadings defining the issues would not merely be erroneous, it would be void. . . . *Breiter* v. *Breiter*, [80 Conn. App. 332, 335–36, 835 A.2d 111 (2003)]; see also *Westfall* v. *Westfall*, 46 Conn. App. 182, 185, 698 A.2d 927 (1997) ([a] judgment cannot be founded on a finding of facts not in issue, although they may have been shown in evidence to which no proper objection was taken . . .)." (Internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, supra, 516.

"[I]n the context of motions to modify support orders, we have held that a court's reliance on a ground not raised in a motion to modify is an abuse of discretion in the absence of an amendment to the motion." (Internal quotation marks omitted.) *Marcus* v. *Cassara*, 223 Conn. App. 69, 83–84, 308 A.3d 39 (2023); see, e.g., id., 84 (court improperly considered whether extracurricular activities order was deviation under child support guidelines and modified order on ground not contained in motion for modification). "In exercising its statutory authority to inquire into the best interests of the child, the court cannot sua sponte decide a matter that has not been put in issue, either by the parties or by the court itself. Rather, it must . . . exercise that authority in a manner consistent with the due process requirements of fair notice and reasonable opportunity to be heard." (Internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, supra, 167 Conn. App. 515.

In the present case, the defendant's appeal challenges the judgment of the trial court denying his motion to modify 432. In that motion, the defendant did not raise any claim seeking a modification on the ground that one of his children had reached the age of majority, and he acknowledged that fact at the hearing on April

8, 2021. When the defendant requested that the court also consider at that hearing his motion to modify 460, in which such a claim was raised, the court expressly declined to do so on the ground that motion to modify 460 had just been filed three days before the hearing, and that proceeding on that motion would deprive the plaintiff of an opportunity to prepare to defend against the allegations raised in the motion. Moreover, the plaintiff's counsel objected, arguing that the defendant, in making that claim, was raising an issue that was entirely separate from what he previously had raised and would require "a separate hearing and separate preparation." It is also noteworthy that the hearing on the defendant's motion to modify 432 did not resume until almost one year later, on March 17, 2022. At no time between the initial hearing date of April 8, 2021, and the second hearing date of March 17, 2022, did the defendant, or his counsel, who filed an appearance on April 13, 2021, renew the defendant's request that his motion to modify 460 be consolidated with his motion to modify 432. Furthermore, at no time during the hearing on March 17, 2022, did the defendant, through his counsel, mention his motion to modify 460, nor was any testimony presented concerning the issue of one of the parties' children reaching the age of majority. On the basis of this record, we cannot conclude that the court abused its discretion in declining to consider a claim that was not raised in the motion before it and of which the plaintiff had not been given proper notice.

To the extent that the defendant suggests he is entitled to a reduction because one of his children has turned eighteen years old, regardless of whether the claim was made in the motion that was before the court, we do not agree. This court has stated previously that the fact that a child has attained the age of majority does not "automatically entitle the [parent] to a reduction

in his alimony and support obligation" but, rather, "provides a basis for the [parent] to seek a modification." *Hughes* v. *Hughes*, supra, 95 Conn. App. 209. Specifically, "[w]hen, as part of a divorce decree, a parent is ordered to pay a specified amount periodically for the benefit of more than one child, the emancipation of one child does not automatically affect the liability of the parent for the full amount. . . . The proper remedy . . . is to seek a modification of the decree." (Internal quotation marks omitted.) Id. The defendant in the present case already has filed a motion to modify asserting this ground as a basis for modifying his unallocated alimony and child support obligation. When that motion is heard, the parties can litigate the issue of whether the parties took into consideration the children reaching the age of majority when they crafted their agreement regarding financial matters,[10] which is structured in such a way as to have two built-in step-downs: the defendant is required to pay $12,500 monthly for three years, after which he will pay "$7500 per month or *until their youngest son is eighteen years old* . . . ." (Emphasis added.) The present appeal, however, concerns the court's judgment denying a different motion in which this issue was not raised. The defendant has not directed this court to any authority, nor are we aware of any, to support his claim that the court was mandated under Connecticut law to take the ages of his children into consideration when it denied his motion to modify 432, even though that issue was not raised in the motion before the court and the court specifically stated that it would not be deciding the issue pertaining

_____

[10] This issue was suggested by the plaintiff's counsel at the hearing on April 8, 2021, when counsel objected to the defendant's raising the issue of the children reaching a certain age and stated, "Your Honor, I believe this particular factor has been addressed in the original agreement between the plaintiff and the defendant." The plaintiff's appellate counsel also stated at oral argument before this court that this issue was "contemplated by the parties as [referenced] by [the] agreement

to the children reaching the age of majority, which would be adjudicated at a different time, when the defendant's motion to modify 460 raising that issue is heard. Indeed, the court arguably would have acted in abuse of its discretion if it had decided the motion before it on the basis of a ground not raised in the motion. See *Marcus* v. *Cassara*, supra, 223 Conn. App. 83–84.

We also briefly address the assertion by the defendant in his appellate brief and by his appellate counsel at oral argument before this court that evidence and testimony concerning the issue of one of the parties' children reaching the age of majority were presented, without objection, at the hearings in this matter. "[I]n the context of a postjudgment appeal, if a review of the record demonstrates that an unpleaded cause of action actually was litigated at trial without objection such that the opposing party cannot claim surprise or prejudice, the judgment will not be disturbed on the basis of a pleading irregularity." (Internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, supra, 167 Conn. App. 517. The present case, however, does not present such a circumstance. First, the record clearly demonstrates that the plaintiff's counsel objected to the court's consideration of the defendant's motion to modify 460 and to the issue of any of the children reaching a certain age being heard at the hearing on April 8, 2021. Second, the only references in the transcripts of the underlying proceedings to one of the parties' children attaining the age of eighteen occurred when the court engaged in a colloquy at the outset of the hearing with the plaintiff's counsel and the defendant, as a self-represented party, to clarify the motions that were being heard at the hearing, which occurred before the court heard testimony on any of the motions. When the court heard testimony on the defendant's motion to modify 432 on March 17, 2022, there was not a single reference to any of the children

reaching the age of majority in any of the testimony presented.

The defendant asserts in his appellate brief multiple times that he introduced testimony regarding the ages of the children, without any citation to the transcripts.[11] See Practice Book § 67-4. It is not clear whether the defendant is asserting that his colloquy with the court and opposing counsel constituted testimony and, thus, evidence concerning the ages of the children. It is well known that "arguments of counsel are not evidence . . . ." *State* v. *Gonzalez*, 188 Conn. App. 304, 317, 204 A.3d 1183 (2019), aff'd, 338 Conn. 108, 257 A.3d 283 (2021). That rule applies equally to the statements and arguments of parties who appear in a self-represented capacity. As this court has stated: "Argument is argument, it is not evidence. . . . So, too, arguments of a pro se litigant are not proof. . . . *In re Justin F.*, 116 Conn. App. 83, 96, 976 A.2d 707, appeal dismissed, 292 Conn. 913, 973 A.2d 660, cert. denied, 293 Conn. 914, 978 A.2d 1109 (2009), cert. denied sub nom. *Albright-Lazzari* v. *Connecticut*, 559 U.S. 912, 130 S. Ct. 1298, 175 L. Ed. 2d 1087 (2010); see also *Baker* v. *Baker*, [95 Conn. App. 826, 832–33, 898 A.2d 253 (2006)] (representations of counsel are not evidence)." (Internal quotation marks omitted.) *Hall* v. *Hall*, 182 Conn. App. 736,

---

[11] "[A]lthough we recognize and adhere to the well-founded policy to accord leeway to self-represented parties in the appeal process, our deference is not unlimited; nor is a litigant on appeal relieved of the obligation to sufficiently articulate a claim so that it is recognizable to a reviewing court." *Deutsche Bank National Trust Co.* v. *Pollard*, 182 Conn. App. 483, 487, 189 A.3d 1232 (2018). "[I]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803–804, 256 A.3d 655 (2021)." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022).

756, 191 A.3d 182 (2018), aff'd, 335 Conn. 377, 238 A.3d 687 (2020); see also, e.g., *Berman* v. *Berman*, supra, 203 Conn. App. 313 (self-represented defendant's statements and closing argument at hearing did not constitute evidence).

Nevertheless, any such claim is unavailing given the court's ruling that motion to modify 460, in which the claim concerning the ages of the children was raised, was not before the court and would not be heard at the hearing. Thus, the fact that the children's ages were mentioned during the brief colloquy between the court, the plaintiff's counsel and the defendant had no bearing on the court's decision. We also reject the defendant's argument that he introduced evidence of his children's ages, without objection, through the child support guidelines worksheet he submitted, which shows the dates of birth of the children. First, as this court has stated previously, "[f]acts proved but not averred cannot be made the basis of a recovery . . . . A judgment cannot be founded on a finding of facts not in issue, although they may have been shown in evidence to which no proper objection was taken." (Citation omitted; internal quotation marks omitted.) *Westfall* v. *Westfall*, supra, 46 Conn. App. 185. Second, "[w]hen presented with a motion for modification, *a court must first determine* whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and . . . make an order for modification. . . .

"In the context of a trial court's consideration of a motion to modify, *the guidelines become relevant only after a change in circumstances has been shown, if that is the ground urged in support of modification* . . . or in determining whether the existing child support order substantially deviates from the guidelines,

if that is the ground urged in support of modification." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Brown* v. *Brown*, 199 Conn. App. 134, 157–58, 235 A.3d 555 (2020); see also *De Almeida-Kennedy* v. *Kennedy*, 188 Conn. App. 670, 679, 205 A.3d 704 ("because the defendant did not raise as a basis for the court's review his claim that his unallocated alimony and child support obligation substantially deviated from the child support guidelines, the court properly did not make findings under the child support guidelines when it determined that there was not sufficient evidence of a substantial change in circumstances to justify modification"), cert. denied, 332 Conn. 909, 210 A.3d 566 (2019). In the present case, because the ground urged in support of motion to modify 432 was that a substantial change in circumstances had occurred, the guidelines would have been relevant only after such a change in circumstances had been shown, which the defendant failed to do.

Accordingly, we reject the defendant's assertion that the court, in its written order denying motion to modify 432, improperly failed to address the defendant's claim that a reduction in the child support component of the unallocated order was warranted due to the fact that one of the parties' three children had reached the age of majority.

## III

The defendant next claims that the court abused its discretion in denying his motion to modify by ignoring the tax returns, financial statements and other financial documents that had been submitted into evidence, and that the court made clearly erroneous factual findings in denying the motion to modify. We are not persuaded.

The following additional facts are relevant to this claim. In its written order denying the defendant's motion to modify 432, the court made the following

findings: "At the time of entering the agreement in May, 2019, the defendant filed a financial affidavit (pleading [number] 408 [on the trial court docket]). He listed gross weekly income of $3867.07 and net weekly income of $2891.99. He listed total liabilities of $1,810,471.69 and total cash value of assets of $231,645. Additionally, he listed total weekly expenses and liabilities of $1486. The defendant list[ed] on his financial affidavit dated [April 5, 2021] (pleading [number] 462 [on the trial court docket]), gross weekly wage at $2423 and his net weekly wage at $1691.51. The defendant list[ed] total weekly expenses and liabilities at $1215 and total liabilities to be $2,160,721. In neither of the defendant's affidavits [did] he list when the debts were incurred or the weekly payments. Taking the defendant's financial affidavit at face value, he pays $812 per week for rent or mortgage and $80 per week for restaurants.

"In 2019, the defendant listed ownership of a house in Weston. He failed to list the value and only the mortgage. In 2022, the home disappeared from his financial affidavit; however, the defendant testified [that] he continued to reside in the home and pay for improvements. The defendant purchased a Mercedes Benz automobile for his employees to drive and a new Jeep for himself. He continues to live an extravagant lifestyle for an individual with failing health and reduced income, as he claims. The defendant asserts a reduction in business income as a result of the pandemic; however, he reduced the payments of alimony and child support prior to the commencement of the pandemic. Moreover, he received pandemic loans and assistance. The court does not find the defendant's testimony credible." The court stated further that "[a] review of the evidence shows the defendant has no issue spending on himself, including meals out, travel and transportation. The defendant paid off significant debts during the period of time he engaged in self-help and reduced his alimony

and child support payments to the plaintiff. The defendant controlled sufficient funds to pay his agreed upon alimony and child support order; however, he unilaterally chose not to do so.''

As we stated previously in this opinion, we review the trial court's judgment denying the defendant's motion to modify his unallocated alimony and child support obligation under an abuse of discretion standard. See *Berman* v. *Berman*, supra, 203 Conn. App. 303. That is, we ''will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'' (Internal quotation marks omitted.) Id.

Under § 46b-86 (a), the defendant had the burden, as the party seeking a modification, of establishing a substantial change in circumstances since the last court order, which was the parties' May 2, 2019 agreement. See id., 304. The establishment of a substantial change in circumstances is a condition precedent for the party seeking relief. See id. Only if such a change is established may the court ''properly consider the motion and, on the basis of the [General Statutes § 46b-84] criteria, make an order for modification. . . . A finding of a substantial change in circumstances is subject to the

clearly erroneous standard of review." (Internal quotation marks omitted.) Id. In the present case, the trial court, which cited the proper standard in its decision, made no express finding concerning whether a substantial change in circumstances had been established. A fair reading of the court's decision denying the motion to modify, however, leads us to conclude that the court implicitly found that no substantial change in circumstances had been established by the defendant. See id., 310.

On appeal, the defendant first asserts that the court ignored "all tax returns, financial statements, debt statements and hundreds of pages of other financial documents that were in evidence." In particular, the defendant argues that the court improperly ignored the information on his financial affidavit. We do not agree.

Although the defendant argues that the court "ignored" his income and the information set forth on his financial affidavit, it is clear that the court, instead, did not credit that information. See *Gainty* v. *Infantino*, 222 Conn. App. 785, 809–10, 306 A.3d 1171 (2023) (rejecting defendant's argument that court improperly failed to consider financial affidavits when "court expressly found the defendant not credible with respect to his claimed decrease in earnings"), cert. denied, 348 Conn. 948, 308 A.3d 36 (2024); *Giordano* v. *Giordano*, 203 Conn. App. 652, 659, 249 A.3d 363 (2021) (court did not ignore defendant's letters and accounting but, rather, discredited them, and this court would not disturb that credibility determination). In doing so, the court noted that certain information was missing from the defendant's financial affidavit concerning when certain claimed debts were incurred. It also found a discrepancy concerning a home in which the defendant resided, as the defendant listed ownership of the home on his 2019 financial affidavit but the home was not mentioned on the defendant's most current financial

affidavit, despite his testimony that he continued to reside there and pay for improvements. The defendant was questioned extensively about his tax returns and discrepancies on those returns, as well as concerning discrepancies with his revenue and expenses as set forth on an expense summary versus his tax returns, which showed different numbers. Contrary to the defendant's assertions, the court was not required to credit the defendant's updated financial affidavit. See *Talbot* v. *Talbot*, 148 Conn. App. 279, 293–94, 85 A.3d 40, cert. denied, 311 Conn. 954, 97 A.3d 984 (2014). As this court has stated previously, "[c]redibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom. . . . Because the trial court is the sole arbiter of witness credibility, it has discretion to reject even uncontested evidence." (Citation omitted; internal quotation marks omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

The court also expressly stated in its decision that it did not find the defendant's testimony credible with respect to his claimed decrease in income, and it is not for this court to second-guess that credibility determination. "The trial court . . . is not bound by the uncontradicted testimony of any witness . . . and is in fact free to reject such testimony. . . . [T]he trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility. . . .

This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. . . . We cannot retry the matter, nor can we pass on the credibility of a witness." (Citations omitted; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878–79, 784 A.2d 905, cert. denied, 258 Conn. 946, 788 A.2d 95 (2001), and cert. denied sub nom. *Vernon Village, Inc.* v. *Giulietti*, 258 Conn. 947, 788 A.2d 97 (2001), and cert. denied, 258 Conn. 947, 788 A.2d 96 (2001), and cert. denied sub nom. *Giulietti* v. *Vernon Village, Inc.*, 258 Conn. 947, 788 A.2d 96 (2001). We, therefore, reject the defendant's claim that the court abused its discretion by ignoring his financial affidavit and other financial documents.

The defendant also asserts that the court made a number of clearly erroneous findings, namely, that the defendant asserted a reduction in his business income as a result of the pandemic, that the defendant paid off significant debts during the time period when he reduced his alimony and child support payments to the plaintiff, that the court did not find his testimony credible, that he continued to live an extravagant lifestyle and that he "controlled sufficient funds to pay the agreed upon alimony and child support order [but] unilaterally chose not to do so."[12] We disagree.

---

[12] The defendant also asserts, without any analysis, that "[t]he holding [in] *Ferraro* v. *Ferraro*, 168 Conn. App. 723, 147 A.3d 188 (2016), necessitates reversal in this case." In *Ferraro*, this court concluded that the trial court's "finding as to the defendant's weekly net income [was] without evidentiary support" because "[t]he federal and state tax deduction figures used by the court to determine net income, as reflected in its . . . child support guidelines worksheet, did not come from the parties' testimony at trial, the exhibits submitted, or the parties' financial affidavits." Id., 733. We decline to review this claim as inadequately briefed, as the defendant has simply made the conclusory statement that *Ferraro* "necessitates reversal," without any explanation about how the circumstances in *Ferraro* apply to the present case. See *Simms* v. *Zucco*, 214 Conn. App. 525, 546 n.14, 280 A.3d 1226 (When an "assertion is unaccompanied by any supporting analysis . . . we decline to review this claim on the ground that it is inadequately briefed.

With respect to the court's finding that "[t]he defendant asserts a reduction in business income as a result of the pandemic; however, he reduced the payments of alimony and child support prior to the commencement of the pandemic," the defendant asserts that his January, 2020 motion to modify did not list COVID-19 as a reason for the modification sought. Nevertheless, in his testimony at the hearing on March 17, 2022, the defendant referred to COVID-19 numerous times. Specifically, he testified that he has health issues and recurring lung problems as a result of having contracted COVID-19 twice, and how that has affected his business, including that it caused him to close down his office. He testified further how all of these issues caused his income to substantially decrease. When asked if he believed that his income had substantially decreased "based on all these factors, COVID-19, your health issues, any other factors [or his] business," he responded that, prior to COVID-19, he started "losing a bunch of business," but that COVID-19 "accentuated all that on top of it." At another point in his testimony the defendant clearly stated, "[COVID-19] affected my business." In summary, the defendant repeatedly referred to COVID-19 in his testimony explaining his purported decrease in income, which was a ground raised in his motion to modify 432. It was not unreasonable, therefore, for the court to find that the defendant, in claiming in his motion to modify that his income had decreased, was asserting COVID-19 as a basis, even though COVID-19 had not been referenced specifically in the motion. We conclude that the court's finding was based on the defendant's testimony and was not clearly erroneous.

See, e.g., *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 749, 183 A.3d 611 (2018) (declining to review claim asserted in single sentence as inadequately briefed); *Studer* v. *Studer*, 320 Conn. 483, 493 n.11, 131 A.3d 240 (2016) (declining to review claim that was made in four sentences in appellate brief as inadequately briefed)."), cert. denied, 345 Conn. 919, 284 A.3d 982 (2022).

The defendant next argues that the court's finding that he "paid off significant debts during the period of time he engaged in self-help and reduced his alimony and child support payment to the plaintiff" is clearly erroneous. In making that argument, the defendant relies on his financial affidavits as well as his testimony at the hearings. As we stated previously in this opinion, the court reasonably could have found not credible the defendant's testimony and the information in his financial affidavit, and we will not second-guess the court's credibility determinations. This claim, therefore, fails.

Finally, the defendant asserts that the following statements of the court are unsupported by the record: (1) "[t]he court does not find the defendant's testimony credible"; (2) the defendant "continues to live an extravagant lifestyle for an individual with failing health and reduced income as he claims"; and (3) "[t]he defendant controlled sufficient funds to pay the agreed upon alimony and child support order; however, he unilaterally chose not to do so." There is no merit to the defendant's assertions. First, it was within the discretion of the court, as the sole arbiter of witness credibility, to find the defendant's testimony not credible, even if it was uncontested. See *Blum* v. *Blum*, supra, 109 Conn. App. 329. That "credibility finding is unassailable on appeal. See *Ruiz* v. *Gatling*, 73 Conn. App. 574, 576, 808 A.2d 710 (2002) ('[w]here the trial court is the arbiter of credibility, this court does not disturb findings made on the basis of the credibility of witnesses')." *J. Wm. Foley, Inc.* v. *United Illuminating Co.*, 158 Conn. App. 27, 57, 118 A.3d 573 (2015). Second, there was evidence and testimony in the record to support those findings of the court. Given all of the discrepancies in the defendant's claimed expenses and income, one of which amounted to a $40,000 difference, the court's failure to credit the defendant's testimony regarding the decrease

in his business income, as well as the evidence and testimony concerning a loan from the defendant to another individual for $138,000, the court reasonably could have concluded that the defendant had sufficient funds to pay his alimony and child support obligation. Its finding about the defendant's extravagant lifestyle is further supported by the evidence concerning the defendant's purchases of a Mercedes Benz automobile for his employees to drive and a new Jeep for himself, despite the defendant's claims of his reduced income. According to the defendant's testimony, he purchased the Jeep for $40,000. The record also contains the defendant's credit card statements, which provide further evidence of his extensive spending on such things as restaurants, clothing, and home improvements. In fact, the defendant testified that, in 2019, he spent $8600 on clothing, which amounted to about $700 worth of clothing every month, and $16,000 on restaurants. On the basis of this record, we conclude that the court's findings are supported by evidence and are not clearly erroneous.

Accordingly, the defendant has failed to demonstrate that the court erred in denying his motion to modify his unallocated alimony and child support obligation.

The judgment is affirmed.

In this opinion the other judges concurred.